**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| DANA HOLDING CORPORATION, | : | No. 44 MAP 2019 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 1869 CD |
| | : | 2017 dated 10/11/18 affirming the order |
| v. | : | of the Workers' Compensation Appeal |
| | : | Board at No. A16-1266 dated 11/28/17 |
| | : | |
| WORKERS' COMPENSATION APPEAL | : | |
| BOARD (SMUCK), | : | |
| | : | |
| Appellees | : | ARGUED: November 19, 2019 |

**OPINION**

**CHIEF JUSTICE SAYLOR**                    **DECIDED: June 16, 2020**

In *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 639 Pa. 645, 161 A.3d 827 (2017), this Court recently ruled that a statutory regime per which the duration of workers' compensation benefits could be curtailed was invalid, since integral terms of the enactment yielded an unconstitutional delegation of legislative power. The present case concerns the retroactive application of this holding to a scenario in which the pertinent constitutional challenge to the statute was advanced during the course of direct appellate review.

In 1996, in response to the rising costs of the workers' compensation liability scheme in Pennsylvania, the General Assembly promulgated an impairment rating

scheme, reposed in Section 306(a.2) of the Workers' Compensation Act,[1] 77 P.S. §511.2.  *See I.A. Constr. Corp. v. WCAB (Rhodes)*, 635 Pa. 551, 553, 139 A.3d 154, 155 (2016).  Under the statute, insurers were required to request an impairment rating evaluation -- or an "IRE" -- after a workers' compensation claimant had received total disability benefits for a period of 104 weeks.  *See* 77 P.S. §511.2(1) (repealed). "Impairment," in this setting, connoted an anatomic or functional abnormality or loss resulting from a compensable injury that was reasonably presumed to be permanent, *see id.* §511.2(8)(i), as distinguished from "disability," which more directly concerns the loss of earnings capacity.[2]

When a claimant received an impairment rating of less than 50 percent, the designation of his disability was converted from total to partial, thereby limiting the insurer's otherwise continuing liability to benefits payable throughout a maximum, closed-ended period of 500 weeks.  *See* 77 P.S. §511.2(7).  Accordingly,

> one main purport of the statute [was] that a claimant whose condition may continue to meet the conventional definition of total "disability" -- a concept centered on overall earnings capacity encompassing both physical capacity and job availability -- may nevertheless be limited in the time frame during which he or she may receive workers' compensation benefits.

*I.A. Constr.*, 635 Pa. at 554, 139 A.3d at 155; *see also Diehl*, 607 Pa. at 280, 5 A.3d at 246 (explaining that an employer/insurer was not required to produce evidence of

---

[1] Act of June 2, 1915, P.L. 736 (as amended 77 P.S. §§1-1041.1, 2501-2626) (the "WCA" or the "Act").

[2] *See Dillon v. WCAB (Greenwich Collieries)*, 536 Pa. 490, 501, 640 A.2d 386, 392 (1994) (explaining that the concept of "disability" under the WCA encompasses both the capacity to work and job availability).  *See generally Diehl v. WCAB (I.A. Constr.)*, 607 Pa. 254, 277-79, 5 A.3d 230, 244-45 (2010) (elaborating upon the distinction between impairment and disability).

earning power or job availability to support conversion of a disability designation from total to partial under Section 306(a.2), based on an effective impairment rating of less than 50 percent). *See generally* DAVID B. TORREY & ANDREW E. GREENBERG, 6 WEST'S PA. PRACTICE SERIES, WORKERS' COMPENSATION: LAW AND PRACTICE §6:41 (3d ed. 2008) ("[T]he 500 weeks provides a horizon with regard to the claimant's entitlement and the employer's liability.").

Significantly, under Section 306(a.2), impairment ratings were to be determined "pursuant to the *most recent edition* of the American Medical Association 'Guides to the Evaluation of Permanent Impairment,'" 77 P.S. §511.2(1) (emphasis added), hereinafter referred to as the "Guides." However, in *Protz*, this Court ruled that this prescription entailed an unconstitutional delegation of lawmaking authority from the Legislature to the American Medical Association. *See Protz*, 639 Pa. at 663, 161 A.3d at 838 (relying upon the mandate of Article II, Section 1 of the Pennsylvania Constitution that "[t]he legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives."). The Court explained that reliance on that private association's normative judgments was impermissible, at least insofar as the Legislature had not provided any standards by which impairment ratings should be assessed or procedural mechanisms to ensure fairness in the determination whether a claimant's disability benefits should cease after 500 weeks. *See id.* at 659-60, 161 A.3d at 835-36. Given that this unconstitutional delegation could not be rationally severed from the balance of the statute, Section 306(a.2) was ultimately deemed to be invalid in its entirety. *See id.* at 667-68, 161 A.3d at 841.

In 2000, Appellee David Smuck ("Claimant") suffered a work-related back injury, for which he received total disability benefits since 2003. Appellant Dana Holding Corporation ("Employer") requested an IRE pursuant to the then-extant impairment

rating regime embodied in Section 306(a.2). In June 2014, Claimant submitted to the IRE and was assigned a whole-body impairment rating of 11 percent, based on the Sixth Edition of the Guides, which was the most recent version. Employer then filed a modification petition seeking to convert Claimant's disability status from total to partial, thus limiting the term of Claimant's disability benefits. *See* 77 P.S. §§511.2(5) & (7). In response, Claimant filed a review petition challenging the modification on the basis that he hadn't reached maximum medical improvement, and the matter was presented to a workers' compensation judge (the "WCJ").

Procedural complexities ensued in light of the Commonwealth Court's intervening decision in *Protz*. *See Protz v. WCAB (Derry Area Sch. Dist.)*, 124 A.3d 406 (Pa. Cmwlth. 2015), *aff'd in part and rev'd in part*, 639 Pa. 645, 668, 161 A.3d 827. Ultimately, the WCJ credited Employer's position on modification, thus yielding a change in disability status from total to partial, effective as of June 2014. *See Smuck v. Dana Holding Corp.*, DSP-7357035-1, *slip op.* at 10 (DLI, Lancaster Field Office Nov. 1, 2016).

Claimant appealed to the Workers' Compensation Appeal Board (the "WCAB" or the "Board"), and the proceedings before the Board were stayed at Employer's behest pending this Court's decision in *Protz*. Upon the issuance of that opinion, the Board reversed the WCJ's order, since the judge had relied upon Section 306(a.2)'s procedures, which this Court had found to be invalid. Accordingly, Claimant's total disability status was reinstated as of the date of the disputed IRE. *See Smuck v. Dana Holding Corp.*, No. A16-1266, *slip op.* at 3-4 (WCAB Nov. 28, 2017).

An appeal was lodged by Employer in the Commonwealth Court, which affirmed, holding that *Protz* applies at least to all cases in which the underlying IRE was actively being litigated when the decision was issued. *See Dana Holding Corp. v. WCAB*

*(Smuck)*, 195 A.3d 635, 643 (Pa. Cmwlth. 2018). Responding to Employer's position that the WCAB should not have applied *Protz* retroactively, the intermediate court first referenced the general rule that appellate courts apply the law in effect at the time of appellate review. *See id.* at 641 (citing *Passarello v. Grumbine*, 624 Pa. 564, 601, 87 A.3d 285, 307 (2014), and *Blackwell v. SEC*, 527 Pa. 172, 182, 589 A.2d 1094, 1099 (1991)). The court cautioned, however, that this approach should not be applied rotely and explained that, ultimately, "[w]hether a judicial decision should apply retroactively is a matter of judicial discretion to be decided on a case-by-case basis." *Id.* (quoting *Passarello*, 624 Pa. at 601, 87 A.3d at 307).

Notably, this Court has specified that a threshold inquiry in retroactivity analysis is whether or not a new rule of law has been announced. *See, e.g.*, *Cleveland v. Johns-Manville Corp.*, 547 Pa. 402, 413, 690 A.2d 1146, 1152 (1997). Here, the Commonwealth Court appears to have assumed that *Protz* announced a new rule, presumably because both parties to the appeal agreed as such. *See* Brief for Petitioner in *Dana Holding Corp. v. WCAB (Smuck)*, 1869 C.D. 2017 (Pa. Cmwlth.), at 25; Brief for Respondent in *Dana Holding*, 1869 C.D. 2017, at 4.

The Commonwealth Court next related that the governing retroactivity analysis -- upon discernment of a new rule -- requires consideration of whether:

> (1) the purpose to be served by the new rule, (2) the extent of the reliance on the old rule, and (3) the effect on the administration of justice by the retroactive application of the new rule.

*Dana Holding*, 195 A.3d at 641 (quoting *Blackwell*, 527 Pa. at 183, 589 A.2d at 1099, which relied for this proposition on *Desist v. U.S.*, 394 U.S. 244, 249, 89 S. Ct. 1030, 1033 (1969), *overruled for purposes of new federal rules in Griffith v. Kentucky*, 479 U.S. 314, 322, 107 S. Ct. 708, 712 (1987), and *Stovall v. Denno*, 388 U.S. 293, 297, 87

S. Ct. 1967, 1970 (1967) (same)).[3]  In terms of purpose, the court noted the parties' agreement that the object of *Protz* was to vindicate the requirements of the Pennsylvania Constitution.  *See Dana Holding*, 195 A.3d at 641.

Regarding the second factor -- reliance -- the Commonwealth Court related that it was cognizant of Employer's argument that hundreds of thousands of claims had been managed by the business and insurance industries under Section 306(a.2); many of these were considered to be final and closed; and the company had forewent the opportunity to pursue other, more traditional avenues to challenge Claimant's disability status.  Nevertheless, the intermediate court found these concerns to be unpersuasive, emphasizing instead that, in Claimant's case, the determination of his disability status was still being actively litigated when the *Protz* decisions were handed down.  *See id.* Additionally, the court opined that the risk of choosing the IRE mechanism over traditional avenues for modification was properly allocated to Employer.  *See id.* at 642. In this respect, the court stressed the Act's remedial nature.  *See id.* (citing *Reifsnyder v. WCAB (Dana Corp.)*, 584 Pa. 341, 348, 883 A.2d 537, 541 (2005)).

In terms of the third factor, the impact upon the administration of justice, the Commonwealth Court again deflected Employer's arguments concerning negative consequences flowing from a full retroactive effect -- encompassing relitigation of matters otherwise thought to be final -- by reiterating that the present case simply was

---

[3] *Blackwell* also discussed a similar set of factors delineated in *Chevron Oil Company v. Huson*, 404 U.S. 97, 106-07, 92 S. Ct. 349, 355 (1971), *overruled for purposes of new federal rules in Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97-98, 113 S. Ct. 2510, 2518 (1993).  The Commonwealth Court, however, limited its discussion to the factors deriving from *Desist* and *Stovall*, *see Dana Holding*, 195 A.3d at 641-42, which in turn were premised on *Linkletter v. Walker*, 381 U.S. 618, 85 S. Ct. 1731 (1965), *overruled for purposes of new federal rules in Griffith*, 479 U.S. at 322, 107 S. Ct. at 712.  The interrelationship between the various factors delineated in these cases is discussed below.

not final. *See id.* ("We examine each case before us, and in this case, the issue of the IRE process was pending before the Board when [*Protz*] was decided."). For the same reason -- *i.e.*, the fact that the contest over the validity of the IRE in Claimant's case remained ongoing -- the intermediate court rejected Employer's claim to a vested right deriving from Section 306(a.2), and concomitantly, a contention by the company that it should at least receive a credit for three years of temporary disability, from the date of the IRE in June 2014 to the decision in *Protz* of June 2017.[4]

The Commonwealth Court then turned to Employer's argument that retroactive application of *Protz* violated its constitutional right, under Article I, Section 11 of the Pennsylvania Constitution, to due course of law. Generally, the intermediate court explained, due course of law is most frequently relevant when the Legislature acts to alter or eliminate a vested or accrued cause of action. *See Dana Holding*, 195 A.3d at 643 (citing *Konidaris v. Portnoff Law Assocs., Ltd.*, 598 Pa. 55, 71, 953 A.2d 1231, 1240 (2008)). In all events, the court observed that, to implicate the constitutional provision, the entitlement in issue must be a vested one. *See id.* at 644 (citing, *inter alia*, *Konidaris*, 598 Pa. at 74, 953 A.2d at 1242). A vested right, the court continued, is "something more than a mere expectation, based upon an anticipated continuance of existing law. It must have become a title, legal or equitable, to the present or future enforcement of a demand, or a legal exemption from a demand made by another." *Id.* (quoting *Konidaris*, 598 Pa. at 74, 953 A.2d at 1242 (citation omitted)).

---

[4] In this respect, it is noteworthy that, after Section 306(a.2) was invalidated in *Protz*, it was replaced by Section 306(a.3) of the Act, which tracks its predecessor statute in relevant respects, except that it specifically directs the use of the Sixth Edition of the Guides in impairment rating evaluations. *See* 77 P.S. §511.3 (2018). Thus, Employer asked (and asks) that the effect of IREs obtained under the provisions of Section 306(a.2) -- although those terms have been deemed invalid -- should nevertheless be partially recognized for other purposes, including any later impairment rating assessment under Section 306(a.3).

In this regard, the Commonwealth Court found that Employer had no reasonable expectation that the IRE would be upheld, much less a vested right, since Claimant's disability status remained subject to continuing litigation. *See id.* Moreover, the intermediate court discerned no involvement of due course of law in scenarios in which a statute is found to be unconstitutional. *See id.* ("[A] party should not be able to claim that its constitutional right to the due course of law is being violated and that it should be able to continue to benefit from an unconstitutional law to the detriment of another party whose rights were affected by that unconstitutional law.").[5]

Upon Employer's petition, we granted discretionary review to consider the following questions:

> Whether the Commonwealth Court erred in applying the [*Protz*] standard to *the case on appeal at the time of this Court's decision* retroactive to the date of the IRE instead of as of the date as of [sic] the Supreme Court changed the law?
>
> Whether the Commonwealth Court's failure to grant the employer credit for the three year period between the date of the IRE evaluation and the date of this Court's decision in [*Protz*] unlawfully violates Employer's constitutional right

---

[5] The Commonwealth Court also rejected Employer's claim that Claimant had waived any entitlement to challenge the application of Section 306(a.2) on non-delegation grounds. *See Dana Holding*, 195 A.3d at 645-47. Employer does not presently challenge the intermediate court's decision in this regard. Indeed, Employer appears to accept that the court's waiver ruling was correct to the extent that such ruling was based on Pennsylvania Rule of Appellate Procedure 1551 and Section 703(a) of the Administrative Law and Procedure Code. *See* Brief for Appellant at 27 n.7; *see also* Pa.R.A.P. 1551(a) (excepting "[q]uestions involving the validity of a statute" from the general prohibition against consideration, upon judicial review of quasi-judicial orders, of issues not raised before the government unit); 2 Pa.C.S. §703(a) (same); *Lehman v. PSP,* 576 Pa. 365, 382, 839 A.2d 265, 276 (2003) (observing under Section 703(a), "claims questioning the [facial] validity of a statute . . . need not be raised before the administrative agency to be preserved for appellate review").

pursuant to the "Due Course of Law" provisions of the Pennsylvania Constitution Article I, Section 11?

*Dana Holding Corp. v. WCAB (Smuck)*, ___ Pa. ___, 208 A.3d 461 (2019) (*per curiam*) (emphasis added).

## I.

## A. Scope of the First Issue

According to its explicit terms, the lead issue presented concerns the application of *Protz* "to the case on appeal at the time of this Court's decision." *Id.* Initially, we observe that Employer's present arguments, and that of the *amici*, materially transcend this issue, the Commonwealth Court's specific holding, and the circumstances now before the Court.[6] For example, deeply interwoven into Employer's argument throughout its brief are policy arguments militating against retroactive application of *Protz* to cases in which specific IRE determinations had been fully litigated prior to that decision's issuance.[7] Claimant, on the other hand, argues strenuously that "[t]he issue

---

[6] The *amici* supporting Employer's position are the Pennsylvania Chamber of Business and Industry, the National Federation of Independent Business, and LeadingAge PA, which submitted a combined brief. The Pennsylvania Association for Justice has filed an *amicus* brief supporting Claimant.

[7] *See, e.g.*, Brief for Appellant at 15 ("Application of [*Protz*] back to the date of the impairment rating evaluation potentially would result in a monumental flood of petitions to reinstate total disability benefits to all claimants who were not barred by the statute of repose in Section 413(a) of the Act."); *id.* at 30 ("Employers and insurers have litigated or managed tens of thousands of claims in reliance on the now-stricken statutory language."); *id.* ("[I]f this Court were to impose full retroactivity of the [*Protz*] holding to the date of the examination, the outcome would culminate in an overwhelming burden on the administrative and judicial systems[.]"); *id.* at 44 ("The significant reach and magnitude of impact upon tens of thousands of disability status determinations compels the conclusion that . . . the holding in [*Protz*] should be applied prospectively only[.]"); *id.* at 51 (alluding to a potential "effort by the Courts to revive closed claims via retroactive application" of *Protz*).

on appeal is limited ONLY to cases that were pending on direct appeal at the time [*Protz*] was determined and where constitutionality was appropriately raised." Brief for Appellee at 19 (emphasis in original); *see also id.* at 16 -17 & n.6, 22-23.

We agree with Claimant's position on this matter. As previously explained, the Commonwealth Court's holding was carefully limited only to cases in which the non-delegation challenge was raised during the course of ongoing litigation over an IRE determination. Indeed, the court took great pains to emphasize the demarcation, as follows:

> We reiterate that our holding is limited to cases, such as this, where the underlying IRE was still being actively litigated when [*Protz*] was issued. The extent to which [*Protz*] may be retroactively applied to another factual scenario is not currently before us.

*Dana Holding*, 195 A.3d at 642 n.9. Concomitantly, the pertinent issue accepted for review by this Court is framed in terms of the application of *Protz* to "the case on appeal at the time of this Court's decision [in *Protz*]." *Dana Holding*, ___ Pa. at ___, 208 A.3d at 461.

Significantly, this Court has explained that, "[t]he adjudicatory process is structured to cast a narrow focus on matters framed by litigants before the Court in a highly directed fashion," *Official Comm. of Unsecured Creditors of Allegheny Health Educ. & Research Found. v. PriceWaterhouseCoopers, LLP*, 605 Pa. 269, 301, 989 A.2d 313, 333 (2010), and that the holding of a judicial opinion is to be interpreted with reference to its facts. *See Maloney v. Valley Med. Facilities, Inc.*, 603 Pa. 399, 415, 984 A.2d 478, 488 (2009). *Accord* Charles W. Rhodes, *Loving Retroactivity*, 45 FLA. ST. U.L. REV. 383, 404 (2018) ("The traditional and ongoing institutional function of the judiciary is resolving actual disputes between litigants in an adversary context impacting the rights and obligations of the litigating parties."). Quite clearly, different ranges of

policy considerations pertain to vindicating constitutional challenges raised and preserved in continuing litigation, versus applying new constitutional rulings to cases that have become final (or in which the usually appropriate time period allowed for raising constitutional challenges to a particular ruling has otherwise passed). Only the former set of circumstances was addressed by the Commonwealth Court and is presently before this Court.[8]

---

[8] Certainly the direction this Court has taken is to enforce procedural requirements such as case-specific issue preservation as a prerequisite to the application of a new rule. *See, e.g.*, *Commonwealth v. Hays*, ___ Pa. __, ___, 218 A.3d 1260, 1266-67 (2019); *accord Blackwell*, 527 Pa. at 188, 589 A.2d at 1102 (foreclosing retroactive application of a judicial decision finding a constitutional defect in a statute to "transactions . . . which are now final"). However, the circumstances associated with retroactive application of *Protz* to cases in which the non-delegation issue was not raised during the litigation of a specific IRE determination may be more nuanced than the circumstances presented in this general line of decisions. *See Womack v. WCAB (Phila. Parking Auth.)*, 14 C.D. 2018, *slip op.*, 2019 WL 1200255, at *4-5 (Pa. Cmwlth. Mar. 13, 2019) (distinguishing *Womack* from the circumstances in the present case -- given that the claimant in *Womack* hadn't challenged the IRE determination in issue on non-delegation grounds until years after his disability benefits had been converted to partial -- and remanding for a hearing to determine whether the claimant continued to be disabled, consistent with *Whitfield v. WCAB (Tenet Health System Hahnemann LLC*, 188 A.3d 599 (Pa. Cmwlth. 2018)); *see also id.* at *5 (explaining that "the facts of *Dana Holding* are sufficiently distinguishable" and "*Dana Holding* cannot inform our decision here").

Notably, as well, recourse to procedural vehicles such as waiver can be viewed as a matter separate and apart from retroactivity/prospectivity analysis. *See, e.g.*, *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758, 115 S. Ct. 1745, 1751 (1995) ("New legal principles, even when applied retroactively, do not apply to cases already closed."); *Findley v. Findley*, 629 S.E.2d 222, 225 (Ga. 2006) (defining "full retroactivity" as "application of a newly-pronounced rule to the parties before the Court and to all others by and against whom claims may be pressed, *consistent with res judicata and procedural bars*" (emphasis added)). *See generally* Rhodes, *Loving Retroactivity*, 45 FLA. ST. U.L. REV. at 420-23 (opining that "[p]rocedural doctrines, such as preclusion, forfeiture, and limitations" are often applied to "mitigate the cost of legal change."). In this case, however, procedural impediments simply are not relevant, *see supra* note 5, so that we need not presently assess the interrelationship of such barriers with the retroactive versus prospective application of new rules.

For the above reasons -- and consistent with the judicious approach of the intermediate court -- we confine our review to the circumstances of the present case, in which it is undisputed that the constitutional non-delegation challenge to Section 306(a.2) was raised in a manner that meets the legal requirements for issue preservation. *See supra* note 5.

## B. Selective Prospectivity, Generally

This Court's retroactivity jurisprudence derives from that of the Supreme Court of the United States, *see, e.g., Blackwell*, 527 Pa. at 183, 589 A.2d at 1099, and accordingly, we begin with a discussion of the development of relevant principles at the national level. By way of background, Employer seeks an application of *Protz* that is selectively prospective, in that the ruling that Section 306(a.2) is unconstitutional was applied to the *Protz* case itself, but Employer has sought and seeks at least a modified application in Claimant's case.[9]

The question of whether, or to what degree, courts should consider curtailing the normal, retroactive application of certain new rulings has been the subject of intense

---

[9] "Selective" or "modified" prospectivity is the application of a decision to the parties in the case in which the decision announcing a new rule is rendered, but thereafter only to parties whose conduct occurs after the announcement. *See Lunsford v. Saberhagen Holdings, Inc.*, 208 P.3d 1092, 1095-96 (Wash. 2009). A decision is purely prospective if it is not even applied to the litigants before the court upon announcement of the new rule. *See id.* Retroactivity entails extending the application of a decision into the larger sphere of acts occurring before the announcement. *See id.*

Again, Employer also seeks modified prospectivity on another plane, since it asks for a credit, in the form of an allowance for three years of partial disability under the Section 306(a.2) regime, toward the 500 weeks of partial disability available under the statute should Claimant's benefits again be converted to the partial-disability track. *See supra* note 4.

debate amongst judges and legal theorists at the national and state levels.[10]  At a theoretical level, on the one hand, it had long been maintained that judges discover but do not make law; rather, the role of the judiciary is to explicate governing legal precepts already in existence.  *See, e.g.*, *Linkletter*, 381 U.S. at 622-23, 85 S. Ct. at 1734 (relating the traditionalist perspective that it was the duty of the court . . . not to 'pronounce a new law, but to maintain and expound the old one'" (quoting 1 WILLIAM BLACKSTONE COMMENTARIES 69 (15th ed. 1809))).  Upon this understanding, judicial decisions naturally will apply retroactively.  *See, e.g.*, *James B. Beam Distilling Co. v. Ga.*, 501 U.S. 529, 535, 111 S. Ct. 2439, 2443 (1991) (plurality) (indicating that the practice of full retroactivity was "overwhelmingly the norm").  Significantly, courts and commentators for many years treated this view of the judicial function as a key distinction between judicial and legislative pronouncements, the latter of which normally apply prospectively.[11]

---

[10] *See, e.g.*, *Lemon v. Kurtzman*, 411 U.S. 192, 198, 93 S. Ct. 1463, 1468 (1973) (plurality) ("[R]econciling the constitutional interests reflected in a new rule of law with reliance interests founded upon the old is 'among the most difficult [processes] which have engaged the attention of courts, state and federal." (citing *Chicot Cty. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 374, 60 S. Ct. 317, 319 (1940)); *Beavers v. Johnson Controls World Servs., Inc.*, 881 P.2d 1376, 1377 (N.M. 1994) (characterizing the selection between mandatory retroactivity as contrasted with selective prospectivity as involving "one of the great jurisprudential debates of the twentieth century"); *compare, e.g.*, Bradley S. Shannon, *The Retroactive and Prospective Application of Judicial Decisions*, 26 HARV. J.L. & PUB. POL'Y 811, 874-76 (2003) (advocating for a firm rule of retroactivity), *with* Beryl H. Levy, *Realist Jurisprudence and Prospective Overruling*, 109 U. PA. L. REV. 1, 25-30 (1960) (making the case for selective prospectivity).

[11] *See, e.g.*, *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265, 114 S. Ct. 1483, 1497 (1994) ("[T]he presumption against retroactive *legislation* is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." (emphasis added)).  *See generally* Elizabeth E. Beske, *Backdoor Balancing and the* (continued…)

Nevertheless, when courts have overruled past decisions or otherwise altered settled (or ostensibly settled) expectations, intractable questions have arisen about the fairness of applying such rulings to conduct undertaken in reliance upon a different legal regime. *See, e.g.*, *Griffin v. Illinois*, 351 U.S. 12, 26, 76 S. Ct. 585, 594 (1956) (plurality) (Frankfurter, J., concurring) ("We should not indulge in the fiction that the law now announced has always been the law. . . . It is much more conducive to law's self-respect to recognize candidly the considerations that give prospective content to a new pronouncement of law."). For this reason, for a time, the Supreme Court of the United States experimented with widening the boundaries of prospective, or selectively prospective, decision-making in seminal cases such as *Linkletter*, 381 U.S. at 629, 85 S. Ct. at 1738 (developing a doctrine by which the Court could deny retroactive effect to a newly announced rule of criminal law), and *Chevron Oil*, 404 U.S. at 106-07, 92 S. Ct. at 355-56 (extending the *Linkletter* doctrine to civil cases). *See generally* Rhodes, *Loving Retroactivity*, 45 FLA. ST. U.L. REV. at 396 (depicting the *Linkletter-Chevron* line of cases as entailing the "high tide of nonretroactivity").

In later decisions, however, exemplified by *Griffith*, 479 U.S. 314, 107 S. Ct. 708, the Supreme Court of the United States retrenched and adopted a firm rule requiring retroactive application -- initially in the criminal-law context -- to cases pending on direct appeal. *See id.* at 328, 107 S. Ct. at 716; *see also Harper*, 509 U.S. at 97, 113 S. Ct. at 2517 (depicting *Griffith* as imposing a "ban against 'selective application of new rules'" (citation omitted)). The *Griffith* Court expressed concern that selectively prospective decision-making was too greatly in tension with the nature of judicial review, which requires the adjudication of specific cases, "and each case usually becomes the vehicle

---

(…continued)

*Consequences of Legal Change*, 94 WASH. L. REV. 645, 652-53 (2019) (discussing "a thousand years of presumed retroactivity" of *judicial* rulings).

for announcement of a new rule." *Griffith*, 479 U.S. at 322-23, 107 S. Ct. at 713. Furthermore, the Court reasoned, once a new rule has been applied to the litigants in a specific case, "the integrity of judicial review requires that we apply that rule to all similar cases pending on direct review." *Id.* at 323, 107 S. Ct. at 713.[12] *See generally* Francis X. Beytagh, *Ten Years of Non-Retroactivity: A Critique and Proposal*, 61 Va. L. Rev. 1557, 1624 (1975) (positing that "the single most significant difficulty presently posed by [prospectivity] -- unequal treatment of those similarly situated resulting solely from the sheer happenstance of the judicial calendar"), *cited in Beavers*, 881 P.2d at 1382. Later, the Supreme Court came to characterize *Linkletter* balancing relative to cases pending on direct appeal as "unprincipled and inequitable." *Teague v. Lane*, 489 U.S. 288, 304, 109 S. Ct. 1060, 1072 (1989).

As to civil matters, the same retrenchment occurred in *Harper*, 509 U.S. 86, 113 S. Ct. 2510, which extended *Griffith* to civil cases upon the admonition that, "[t]he Court has no more constitutional authority in civil cases than in criminal cases to disregard current law or to treat similarly situated litigants differently." *Id.* at 97, 113 S. Ct. at 2517 (quoting *Am. Trucking Ass'ns, Inc. v. Smith*, 496 U.S. 167, 214, 110 S. Ct. 2323, 2350 (1990) (plurality) (Stevens, J., dissenting)). Accordingly, the Supreme Court largely ruled out the possibility of selective prospectivity across the wider range of cases.[13]

---

[12] Parenthetically, it was clear from *Griffith* that the Supreme Court intended that new rules should not be applied to matters in which a judgment of sentence was final. *See id.* ("[W]e fulfill our judicial responsibility by instructing the lower courts to apply the new rule retroactively to cases not yet final."). Again, the application of procedural rules may perhaps be viewed as an independent assessment in the analysis relating to claims that otherwise would be barred. *See supra* note 8.

[13] *See generally* Rhodes, *Loving Retroactivity*, 45 Fla. St. U.L. Rev. at 390 ("The Supreme Court now abides by the doctrine that decisions applying new legal rules to the parties govern all pending and future noncollateral adjudicative proceedings, even if the operative events in that proceeding occurred under a different legal framework[.]"); (continued…)

## C. New Rules and Unconstitutional Statutes

The above principles, as they have evolved, apply to the application of new *federal* rules. However, per what is often termed the "Sunburst Doctrine," state courts remain free to evaluate the propriety of prospective application of new state-level rules on their own terms. *See Great Northern Ry. Co. v. Sunburst Oil & Refining Co.*, 287 U.S. 358, 364, 53 S.Ct. 145, 148 (1932) ("We think the Federal Constitution has no voice upon the subject" of whether a state court may decline to give its decisions retroactive effect.). *See generally* Hammer, *Retroactivity and Restraint*, 41 HARV. J.L. & PUB. POL'Y at 426-33. Since, as the Commonwealth Court recognized, this Court's decisions have continued to recognize a role for a balancing of the competing interests in discrete cases, we proceed to discuss the potential application of balancing in the context of "new rules" and judicial rulings that statutes violate a state constitution.

It is often said in the cases that a threshold requirement to any consideration of prospective application of a judicial decision is that it must announce a new rule or principle of law, and indeed, such requirement has been embedded in a version of the

---

(…continued)

Stephen J. Hammer, *Retroactivity and Restraint: An Anglo-American Comparison*, 41 Harv. J.L. & Pub. Pol'y 409, 421 (2018) (discussing *Harper* as reiterating the "two basic norms of constitutional adjudication' that opposed prospectivity: first, the nature of judicial review as distinct from legislation, and second, the need to treat similarly situated parties the same" (quoting *Harper*, 509 U.S. at 95, 113 S. Ct. at 2516)).

Although the Supreme Court espoused a firm rule of retroactivity, it has otherwise suggested that the possibility of prospective application may remain open in extraordinary circumstances. *See, e.g.*, *Ryder v. United States*, 515 U.S. 177, 184-85, 115 S. Ct. 2031, 2036-37 (1995) (indicating that "whatever the continuing validity of *Chevron Oil* after *Harper* . . ., there is not the sort of grave disruption or inequity involved in awarding retrospective relief to this petitioner that would bring that doctrine into play"). Additionally, discrete considerations continue to arise in tax refund cases. *See generally* Beske, *Backdoor Balancing*, 94 WASH. L. REV. at 688-89.

*Linkletter-Chevron* balancing test. *See, e.g., Chevron Oil*, 404 U.S. at 106, 92 S. Ct. at 355. Classically, this has been said to entail the overruling of clear past precedent or the resolution of an issue of first impression that was not clearly foreshadowed. *See id.*

Many courts, however, have highlighted the "considerable ambiguity in the threshold requirement that [the] court must announce a 'new' legal rule." *Davis v. Moore*, 772 A.2d 204, 227 (D.C. 2001);[14] *accord Teague*, 489 U.S. at, 301, 109 S. Ct. at 1070 (recognizing that "[i]t is admittedly often difficult to determine when a case announces a new rule").[15] Moreover, while judicial decisions declaring statutes unconstitutional may not readily fit the paradigm of new rules or principles of law, particularly when the underlying constitutional precepts are well established, the Supreme Court of the United States has recognized that such decisions raise the same concerns about reliance and vested rights that have animated the application of balancing tests to determine whether the effect of new rules should be limited to prospective application.

---

[14] Notably, with regard to "new rules of local, *i.e.*, District of Columbia, law," the District of Columbia Court of Appeals occupies a role parallel to that of a state court, in that it retains the same independence in assessing prospectivity. *Davis*, 772 A.2d at 226-27 (citing *Sunburst Oil*, 287 U.S. at 364-65, 53 S. Ct. at 148).

[15] The District of Columbia Court of Appeals elaborated as follows:

> When is a legal rule "new" enough to meet this requirement? To say that the test is whether the new rule is a "clear break," or "newly minted," or "not clearly foreshadowed," offers little real guidance; not only do such standards invite subjective adjudication, but they also are not consistent with each other. "Not clearly foreshadowed" is a more lenient standard than "clear break" while "newly minted" sounds like it falls somewhere else on the continuum of novelty -- though exactly where is not easy to say.

*Davis*, 772 A.2d at 227.

In the early cases, courts generally accorded full retroactivity to judicial rulings holding statutes to be unconstitutional via the application of a void *ab initio* doctrine. In a seminal decision, *Norton v. Shelby County*, 118 U.S. 425, 6 S. Ct. 1121 (1886), the Supreme Court of the United States pronounced that an unconstitutional action "confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." *Id.* at 442, 6 S. Ct. at 1125.

However, courts began to develop a hesitancy to apply the doctrine strictly, since:

> The effect of the subsequent ruling as to [the constitutional] invalidity [of a statute] may have to be considered in various aspects,—with respect to particular relations, individual and corporate, and particular conduct, private and official. Questions of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted upon accordingly, of public policy in the light of the nature both of the statute and of its previous application, demand examination. These questions are among the most difficult of those which have engaged the attention of courts, state and federal, and it is manifest from numerous decisions that an all-inclusive statement of a principle of absolute retroactive invalidity cannot be justified.

*Chicot*, 308 U.S. at 374, 60 S. Ct. at 319. In this regard, in an oft-quoted passage from the plurality opinion in *Lemon*, four Justices depicted statutory and judge-made rules of law as "hard facts on which people must rely in making decisions and in shaping their conduct." *Lemon*, 411 U.S. at 199, 93 S. Ct. at 1468.

Consistent with such sentiments, many courts came to recognize a "modern trend" away from applying the void *ab initio* doctrine, in favor of "a more equitable and realistic approach that is tempered by considerations of reasonableness and good-faith reliance on the purportedly valid statute." *Perlstein v. Wolk*, 844 N.E.2d 923, 931 (Ill. 2006); *see also id.* at 929 (opining that strict application of the void *ab initio* doctrine

"unduly discounts the real-life consequences flowing from a statutory enactment"); *accord Edwards v. Allen*, 216 S.W.3d 278, 291 (Tenn. 2007); *Lang v. Mayor of Bayonne*, 68 A. 90,92 (N.J. 1907) ("To require the citizen to determine for himself, at his peril, to what extent, if at all, the Legislature has overstepped the boundaries defined by the Constitution . . . would be to place upon him an intolerable burden.").

In this vein, the Supreme Court of the United States departed from application of the void *ab initio* doctrine in *Lemon*, finding it appropriate to apply a judicial ruling that a statute violated the United States Constitution in a prospective fashion. *See Lemon*, 411 U.S. at 208-09, 93 S. Ct. at 1473.[16] And, notably, the lead opinion both pronounced that the prior decision finding a statute unconstitutional announced a new rule, *see id.* at 206, 93 S. Ct. at 1472, and engaged in a balancing assessment along the lines of the considerations delineated in *Linkletter* and *Chevron, see id.* at 199-209, 93 S. Ct. at 1469-73, albeit that the opinion blended the discussion of prospectivity and remedies.[17] *See generally Reynoldsville Casket*, 514 U.S. at 754, 115 S. Ct. at 1749 (positing that "the ordinary application of a new rule of law 'backwards,' say, to pending cases, may *or*

---

[16] Although the lead opinion in *Lemon* was supported only by a plurality of Justices, the result -- *i.e.*, prospective application -- garnered majority support.

[17] *Lemon* also has several other unique and distinguishing features, in that it concerned government financing, predated *Harper*, and did not implicate the concern about disparate treatment of similarly-situated litigants (since the relief accorded concerned the same parties involved in the initial litigation of the issue of the constitutional validity of the underlying statute). *See Lemon*, 411 U.S. at 193-94, 93 S. Ct. at 1466. The decision is referenced here solely for the proposition that a majority of the Court declined to enforce the invalidity of a statute retroactively, with at least four Justices invoking equitable considerations including reliance interests. *But see Reynoldsville Casket*, 514 U.S. at 762, 115 S. Ct. at 1753 (Kennedy, J., concurring) (maintaining that the mere application of well-settled constitutional principles to discrete factual scenarios is not the application of a new legal theory or one that had not been foreshadowed by other precedents).

*may not*, involve a further matter of remedies"). The Supreme Court has applied a similar approach to other cases, at least in the public financing arena. *See City of Phoenix, Az. v. Kolodziejski*, 399 U.S. 204, 213-15, 90 S. Ct. 1990, 1996-97 (1970); *Cipriano v. City of Houma*, 395 U.S. 701, 706, 89 S. Ct. 1897, 1900 (1969) ("Where a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity." (citation omitted)).

### D.  Additional Difficulties With Prospective Applications

In the *Davis* decision, referenced above, the District of Columbia Court of Appeals not only highlighted the ambiguity in determining whether a particular decision has announced a new rule for purposes of the *Linkletter-Chevron* doctrine, *see supra* Part I(C), but more broadly observed that the doctrine "is difficult to apply in a principled and predictable fashion." *Davis*, 772 A.2d at 227; *accord Commonwealth v. Geschwendt*, 500 Pa. 120, 125, 454 A.2d 991, 994 (1982) (plurality) ("Even the terms 'prospective' and 'retrospective' are deceiving in their complexities."). The court posited that the requirement for courts to investigate and balance reliance interests was an "open-ended inquiry that is bereft of standards to guide it." *Davis*, 772 A.2d at 227. Noting that the pertinent questions are partly factual, the court also highlighted the difficulty in being "expected to answer them without the benefit of a true evidentiary record detailing the extent to which the old rule of law was relied upon." *Id.* at 228; *see also id.* ("The court is compelled to speculate, and to base its answers on hypotheses that are untested and probably untestable."). *See generally* Rhodes, *Loving Retroactivity*, 45 FLA. ST. U.L. REV. at 409 ("The Court does not have the structural capacity to conduct independent investigations of the potential applications of -- and consequences from -- its new legal pronouncements."). Ultimately, the District of

Columbia Court of Appeals opted to follow the approach of the Supreme Court, settling on the same firm (or firmer) approach of retroactivity embodied in *Griffith* and *Harper*. *See Davis*, 772 A.2d at 230.

Another primary difficulty associated with *Linkletter-Chevron* balancing is that judgments about context are important to the assessment of an appropriate application. *See, e.g.*, *Reynoldsville Casket*, 514 U.S. at 755, 115 S. Ct. at 1749 ("Not all cases concerning retroactivity and remedies are of the same sort."). For example, although a number of courts maintain the balancing approach for new state-level rules even after *Griffith* and *Harper*, *see, e.g.*, *Beavers*, 881 P.2d at 1382, most courts recognize a very strong impetus in favor of retroactivity and the application of the void *ab initio* doctrine in criminal cases. *See, e.g.*, *People v. Gersch*, 553 N.E.2d 281, 288 (Ill. 1990) (explaining that "in the area of criminal prosecution, the *ab initio* principle is especially appropriate"); *Commonwealth v. Derhammer*, 643 Pa. 391, 399, 173 A.3d 723, 728 (2017) ("It is undisputed that a conviction based on an unconstitutional statute is a nullity."). The areas of property, contracts and taxation may warrant greater consideration of reliance interests, militating in favor of the prospective application of new rules. *See Lunsford*, 208 P.3d at 1097; *see also supra* note 13; *Oz Gas*, 595 Pa. at 146, 938 A.2d at 285 (alluding to the "perhaps-unique effect of holding that a decision regarding a tax statute is retroactive").

There are many other variables, including whether a prior judicial (as opposed to legislative) decision has been overruled, a scenario which harmonizes more comfortably with the concept of a new judicial rule than paradigms involving unconstitutional statutes. By way of another example, when a state court is engaging in traditional substantive lawmaking by making adjustments to the common law, the case favoring prospectivity are stronger. *See In re L.J.*, 622 Pa. 126, 150, 79 A.3d 1073, 1087 (2013).

Notably, some commentators have observed that the courts have not been consistent in bearing relevant contextual considerations in mind. *See, e.g.*, Richard S. Kay, *Retroactivity and Prospectivity of Judgments in American Law*, 62 AM. J. COMP. L. 37, 65 (2014) ("For the most part, . . . neither courts nor commentators have regarded the source of the law at issue as of much consequence to the temporal effect of a judgment."). The many variables and inconsistencies ultimately led the Supreme Court of the United States to remark that "[n]ot surprisingly, commentators have 'had a veritable field day' with the *Linkletter* standard, with much of the discussion being 'more than mildly negative.'" *Teague*, 489 U.S. at 303, 109 S. Ct. at 1071 (quoting Beytagh, *Ten Years of Non-Retroactivity*, 61 VA. L. REV. at 1558 & n.3).

### E. Pennsylvania's Approach

The *Blackwell* decision, referenced by the Commonwealth Court, the parties, and their *amici*, has been treated as a seminal decision in Pennsylvania on the subject of retroactive versus prospective application. In *Blackwell*, the Court determined the applicability, on direct appellate review, of a previous holding that a statutory provision extending the tenure of the State Ethics Commission was an unconstitutional delegation of legislative power and was therefore void. *See Blackwell*, 527 Pa. at 176, 589 A.2d at 1096.

The *Blackwell* Court initially explained that "the general rule followed in Pennsylvania is that we apply the law in effect at the time of the appellate decision," *id.* at 182, 589 A.2d at 1099 (citation omitted), and that "a party whose case is pending on direct appeal is entitled to the benefit of changes in law which occur[] before the judgment becomes final." *Id.* (citing *Commonwealth v. Brown*, 494 Pa. 380, 383, 431

A.2d 905, 906-07 (1981)).[18]  Nevertheless, the *Blackwell* Court maintained (even in the aftermath of *Griffith*'s overruling of *Linkletter* but prior to *Harper*'s overruling of *Chevron Oil*) that retrospective application is a matter of judicial discretion to be exercised on a case-by-case basis.  *See id.* (citing *August v. Stasak*, 492 Pa. 550, 554, 424 A.2d 1328, 1330 (1981), in turn citing *Linkletter*, 381 U.S. at 629, 85 S. Ct. at 1738).

Referencing *Desist*, 394 U.S. 244, 89 S. Ct. 1030, and *Stovall*, 388 U.S. 293, 87 S. Ct. 1967 -- which derived from *Linkletter* -- the *Blackwell* Court proceeded to conduct a very brief balancing assessment under the *Linkletter* factors.  *See Blackwell*, 527 Pa. at 183-84, 589 A.2d at 1099-1100.  Notably, the preceding passage of the *Blackwell* Court's opinion recognized that such balancing was only appropriate with respect to the application of a "new rule."  *Id.* at 183, 589 A.2d at 1099 ("The U.S. Supreme Court has viewed the decision of whether to apply *a new rule* retroactively or prospectively as a function of three considerations . . .." (emphasis added)).

After having performed this balancing under the *Linkletter* factors, the *Blackwell* Court turned to the *Chevron Oil* standard.  The Court concluded that the *Chevron Oil* test was not met, because the first prong requires the establishment of a new principle of law, but that the relevant determination that a statute was unconstitutional did not constitute such a new rule.  *See id.* at 184, 589 A.2d at 1100.  The *Blackwell* Court gave very short shrift (if any) to the remaining *Chevron Oil* factors, while seeming to lack an

---

[18] Notably, *Brown* had previously been criticized by a plurality of Justices in *Geschwendt*, 500 Pa. 120, 454 A.2d 991, who strongly aligned themselves with the "modern trend" favoring selective prospectivity upon equitable balancing.  *See id.* at 134, 454 A.2d at 999 ("The 'even handed justice' argument myopically considers only the interest of the disappointed litigant and ignores our responsibility to provide a fair system of justice for all of the citizens of this Commonwealth.").  As reflected in *Blackwell* and elsewhere, however, *Brown* has survived such criticism.  *See, e.g.*, *Rothrock v. Rothrock Motor Sales*, 584 Pa. 297, 308, 883 A.2d 511, 517 (2005) (citing *Brown*).

appreciation of the central role of a new rule to the application of both *Linkletter* and *Chevron Oil*, as well as the integral substantive and historical relationship between the factors delineated in those opinions.[19]  *See id.* at 185, 589 A.2d at 1100 (curtailing balancing under *Chevron Oil* since "[t]hat prime impetus [*i.e.,* that a new rule would prejudice those formerly advantaged by an old one] is not a component in the instant appeal").  *See generally* Beske, *Backdoor Balancing*, 94 WASH. L. REV. at 651-52 (describing "three eras of retroactivity" jurisprudence emanating from the Supreme Court of the United States).

Nevertheless, the *Blackwell* Court's rationale for determining that a new rule had not been announced is significant, in that the Court reasoned that the constitutionally-based non-delegation principles underlying the previous decision deeming the relevant statute invalid were well established, despite the application of such principles to a unique setting (*i.e.,* extension of the tenure of the Ethics Commission).  *See id.* at 184-85, 589 A.2d at 1100 (citing *Schreiber v. Republic Intermodal Corp.*, 473 Pa. 614, 622-25, 375 A.2d 1285, 1289-90 (1977)).

The *Blackwell* Court proceeded to recognize the evolving concern that citizens must rely on presumptively valid constitutional enactments.  *See id.* at 187, 589 A.2d at 1101 (citing *Lemon*, 411 U.S. at 197, 93 S. Ct. at 1468, for the proposition that "statutory or even judge made rules of law are hard facts on which people must rely in making decisions and in shaping their conduct").  In this vein, the *Blackwell* Court summarily pronounced that "it would indeed be chaotic to act as though the offending provision of the [statute ruled to have been invalid] had never been enacted into law." *Id.* at 187-88, 589 A.2d at 1102.  For this reason, the Court declared that the ruling

---

[19] In the latter regard, *Linkletter* balancing and *Chevron* balancing are essentially redundant conceptions, albeit that the earlier case arose in a criminal setting and the later one in the civil arena.

would not be extended to transactions which already had become final.  *See id.* at 188, 589 A.2d at 1102.  In these passages from its opinion, the *Blackwell* Court seemed to allow that some sort of equitable balancing might be appropriate in some set of circumstances to mitigate harsh effects from a ruling that a statute upon which people had relied was unconstitutional.  *Accord Cianfrani v. SERB*,  505 Pa. 294, 300, 479 A.2d 468, 471 (1984) (determining that the existence of a presumptively valid statute, prior to a judicial declaration of its invalidity, was "an operative fact of consequence in the review of the claims presented" relative to retrospective versus prospective application (citing, indirectly, to *Chicot*, 308 U.S. at 374, 60 S. Ct. at 318)).

The *Blackwell* Court then explained -- inconsistently with its previous decision that no new rule of law had been established -- that:

> Where an appellate decision overrules prior law *and announces a new principle*, unless the decision specifically declares the ruling to be prospective only, the new rule is to be applied retroactively to cases where the issue in question is properly preserved at all states of adjudication up to and including any direct appeal.

*Blackwell*, 527 Pa. at 188, 589 A.2d at 1102 (quoting *Commonwealth v. Cabeza*, 503 Pa. 228, 233, 469 A.2d 146, 148 (1983) (emphasis added)).  Because the previous decision deeming the statute invalid did not specifically declare the ruling to be prospective only, the Court held that it applied to the case then before it as well as all others pending on direct appeal where the challenge had been raised.  *See id.*

From this, two observations are relevant.  First, the *Blackwell* Court extended a principle from the jurisprudence governing new rules to rulings that statutes are unconstitutional (albeit while otherwise relying on the same new-rules overlay as a reason why that specific jurisprudence should not apply).  Second, the brief balancing exercise that the *Blackwell* Court previously had undertaken seemed to have been

wholly irrelevant to the outcome, given that a firm rule of retroactivity was ultimately applied to the circumstances at hand in any event.[20]

Since *Blackwell*, this Court has continued to say that retroactive or prospective application of state rules is a matter of judicial discretion but nevertheless has maintained relatively firm enforcement of the general rule applying new state rules to cases pending on direct appeal in which the issue has been preserved. *See, e.g.*, *Passarello*, 624 Pa. at 601, 87 A.3d at 307.[21] In this regard, relative to cases pending on direct appeal in which the pertinent issue has been raised and preserved, the current state of Pennsylvania law -- in effect -- appears to more closely resemble *Griffith* and *Harper* than *Linkletter* and *Chevron*.[22]

---

[20] In other words, *Linkletter-Chevron* balancing relative to cases in the course of continuing litigation and selective prospectivity are inherently inconsistent with the principle that all cases pending on direct appeal will be treated the same.

[21] In more cases than not, the approach has been treated more or less as in the nature of a limiting principle, with emphasis on the issue preservation dynamic. *See, e.g.*, *Hays*, ___ Pa. at ___, 218 A.3d at 1266-67.

[22] Again, Pennsylvania courts are not alone in having great difficulty with retrospectivity/prospectivity analysis. *See, e.g.*, Kay, *Retroactivity and Prospectivity*, 62 AM. J. COMP. L. at 66 ("[T]he current confused state of the law on the possibility of limited retroactivity of judgments demonstrates a persistent and possibly irresoluble tension in the American view of law and of the roles of legal institutions."); *see also supra* Part I(D) and note 10.

Parenthetically, this Court's new-rules jurisprudence is inconsistent in another aspect. In *Passarello*, this Court treated its disapproval of the ruling of an intermediate court as being in the nature of a new rule. *See Passarello*, 624 Pa. at 602, 87 A.3d at 308. However, the Court has previously maintained that the disapproval of intermediate-court precedent does not constitute a new rule. *See, e.g.*, *Kendrick v. District Attorney of Phila. Cty.*, 591 Pa. 157, 171-72, 916 A.2d 529, 538 (2007). Given that it is not presently material, we leave this incongruity for another day.

## F. Arguments and Analysis

Employer's main contentions are that this Court has the authority to limit the effect of *Protz* to prospective application; *Protz* announced a new rule of law; and accordingly, the Court has the power to limit the retrospective application of the ruling in that case. In terms of the considerations pertinent to the prospectivity/retroactivity assessment, Employer presents its case under the *Chevron* criteria, *see, e.g.*, Brief for Appellant at 15, 20-21, 44, centering on the purpose and effect of the asserted new rule, as well as equities associated with reliance and hardship ensuing on account of the prior state of the law. *See Chevron*, 404 U.S. at 106-07, 92 S. Ct. at 355-56.[23] Employer also alludes to the administrative burdens associated with a completely upending of Section 306(a.2) IRE determinations.

Particularly, Employer stresses the Legislature's focus on cost containment when it enacted Section 306(a.2), as well as the reliance of employers and insurers on the presumptively valid statute for over twenty years prior to *Protz*. Further, Employer observes that Section 306(a.2) "withstood several challenges to this Court which never clearly indicated that it would invalidate the IRE provisions on constitutional grounds." *Id.* at 16; *see also id.* at 22-23. For this reason, Employer maintains that "the statute was constitutional until this Court declared otherwise on June 2, 2017[.]" *Id.* at 16.

---

[23] Employer emphasizes that:

> It is too late to send many [c]laimants back for independent medical evaluations and attempt to find job availability because many [c]laimants have aged to the point where they no longer are employable. In many of those cases, just as in this one, disability no longer is due solely to the work injury but to a plethora of co-morbidities associated with the aging process.

Brief for Appellant at 42-43.

Employer also points to the Commonwealth Court's 2014 decision in *Wingrove v. WCAB (Allegheny Energy)*, 83 A.3d 270 (Pa. Cmwlth. 2014), in which a non-delegation challenge to Section 306(a.2) had been rejected.  *See* Brief for Appellant at 277.[24]

Throughout its brief, Employer strives to bolster the weight of its own interests while minimizing those of Claimant.  For example, as noted, Employer attempts to magnify the import of the present ruling by projecting its impact onto the broader range of cases in which a non-delegation challenges to IREs were not raised prior to the initial determination of their validity.  *See supra* Part I(A) & n.7.  As to Claimant, Employer opines that he is not prejudiced by allowing a credit for the time that he received partial disability benefits, at the total disability rate, under the invalid IRE, "because his weekly wage payment remained the same."  Brief for Appellant at 16.  Attempting to portray the present matter as falling within a category of cases in which this Court has recognized that it has greater discretion to apply a decision prospectively, Employer argues extensively that Section 306(a.2) is entirely procedural in nature.  *See* Brief for Appellant at 37-40 (citing *L.J.*, 622 Pa. at 150, 79 A.3d at 1087 ("We possess greater discretion to impose a decision prospectively only 'if the [new rule of law] is of the court's own making, *involves a procedural matter*, and involves common law development'" (emphasis added; citation omitted))).

---

[24] As Claimant stresses, however, few of the cases cited by Employer in this line have anything to do with constitutional non-delegation principles.  *See* Brief for Appellee at 11-12.  With regard to *Wingrove*, Claimant correctly explains that the claimant's non-delegation arguments were rejected for lack of development and not upon a deep review of the merits.  *See id.* at 12 (citing *Wingrove*, 83 A.3d at 277).

Despite Claimant's position before the Commonwealth Court, citing to *Blackwell*, he now takes the position that no new rule of law is involved here. *See* Brief for Appellee at 10-11. In any event, Claimant relies heavily on the general rule applying new rules to cases pending on direct appeal in which the relevant challenge has been preserved. *See id.* at 14-23. To the degree that *Linkletter-Chevron* balancing would be appropriate, Claimant maintains that Employer had no legitimate expectation of finality, since he timely raised a non-delegation challenge; Employer will have time to adjust to its continuing obligations given its continuing obligation to pay benefits at the total disability rate through 2023; and there otherwise is no vested right to a "credit" on the terms sought by Employer. *See id.* at 4 ("The Employer cannot assert that its rights are fundamentally more important than those of Pennsylvania's injured workers and therefore it can divest those injured workers of their right to protect their own interests in a remedy for the harm they have sustained."). Claimant also continues to highlight the remedial nature of the Workers' Compensation Act. *See id.* at 15-16 (citing *Reifsnyder*, 584 Pa. at 348, 883 A.2d at 541).

Initially, we will address Employer's parsimonious treatment of Claimant's interests. First, *Protz* rested on the fact that the General Assembly invalidly delegated substantive lawmaking authority -- *i.e.*, material facets of the normative judgments controlling which claimants will and which of them will not continue to receive benefits past 500 weeks -- to a private entity. *See Protz*, 639 Pa. at 659-60, 161 A.3d at 836-37. Thus, the notion that Section 306(a.2) can be couched as procedural, and that its substantive import can be overlooked, is not creditable.

Similarly, Employer's argument that Claimant would not be prejudiced by a selectively prospective application of *Protz* is facially meritless. Employer seeks a credit for the time that Claimant received partial disability benefits on account of the invalid

Section 306(a.2) precisely so that it can carve that time out from its 500-week obligation, should Claimant's benefits subsequently be converted back to partial. Such a reduction clearly has serious financial consequences inuring to injured claimants.

Ultimately, we find that the inertia favoring application of the general rule of retroactive application to cases pending on direct appeal should control. Significantly, this case concerns none of the subject areas in which this Court has observed that it has additional latitude to implement a ruling prospectively, *i.e.*, rules of the court's own making, involving procedural matters, or entailing common law development. *See L.J.*, 622 Pa. at 150, 79 A.3d at 1087. It does not involve public financing or tax refunds, which places it in contrast with cases such as *Oz Gas*. Although there may be some remaining latitude for a balancing of interests given the longstanding presumptive validity of Section 306(a.2) and employers' and insurers' understandable reliance thereon for many years, we find that Employer has not shown that its interests are so substantially predominant as to justify a departure from the default approach.[25]

Claimant had a right to be free from an unconstitutional delegation of legislative power affecting his substantive rights, which will be vindicated here. Significantly, this case arises in the landscape of the substantial compromises and tradeoffs effected in a workers' compensation system, to which this Court has alluded many times. *See, e.g.*, *Triangle Bldg. Ctr. v. WCAB (Linch)*, 560 Pa. 540, 548, 746 A.2d 1108, 1112 (2000) (discussing the underlying trade-off between loss spreading and insulation of employers from tort liability inherent in the workers' compensation system). And the claimants' interests are substantially elevated in the IRE context, in light of the "severe and explicit

---

[25] We also appreciate that the Legislature has signaled its approval of the Sixth Edition Guides via its enactment of Section 306(a.3) in the aftermath of *Protz*. For the above reasons and those stated below, however, we find this factor, as well, to be insufficient to tip the balance in favor of selective prospectivity.

repercussions . . . upon claimant's entitlement to continuing benefits," without any evaluation (administrative, judicial, or otherwise) of the traditional disability considerations of ability to work and job availability. *I.A. Constr.*, 635 Pa. at 561-62, 139 A.3d at 159-60. In view of the courts' institutional limitations, *see supra* Part I(D), and the absence of any developed, legislative-type record, we decline to proceed with an attempt to engage in any deeper weighing of the important, respective, competing interests involved here.

Instead, discerning no clear predominance of weight in Employer's policy arguments, we apply the general rule of retroactivity and hold that the Commonwealth Court did not err in applying the *Protz* standard "to the case on appeal at the time of this Court's decision," retroactive to the date of the IRE. *Dana Holding*, ___ Pa. at ___, 208 A.3d at 461.

Justice Dougherty's concurring opinion cites the *Blackwell* decision for the proposition that this Court applies *Linkletter* balancing in criminal cases and *Chevron Oil* balancing in civil ones. *See* Concurring Opinion, *slip op.* at 2. In fact, as previously explained, *Blackwell* itself applied both of these overlapping tests distinctly within the confines of a single civil case. *See supra* Part I(E). Additionally -- and inconsistent both with *Blackwell*'s own distinct treatment of the two tests and the assertion by the present concurrence -- the *Blackwell* Court specifically opined that there was no difference between the balancing criteria applied, respectively, in civil and criminal cases. *See Blackwell*, 589 A.2d at 184 n.6, 589 A.2d at 1100 n.6.

The concurrence proceeds to criticize this opinion for failing to either overrule *Blackwell* or to apply one particular line of reasoning from the shifting and sometimes irreconcilable rationale employed by the *Blackwell* Court. *See* Concurring Opinion, *slip op.* at 4. The fact of the matter is, however, that our decision harmonizes with the final

line of *Blackwell*'s reasoning, which applied of the general rule of retroactivity to cases pending on direct appeal. *See Blackwell*, 527 Pa. at 188, 589 A.2d at 1102. Our hesitation in crediting this facet of *Blackwell* outright is that the *Blackwell* Court framed the approach as applicable to instances in which prior law is overruled and a new principle is announced, *see id.*; whereas, we are more of the view that "the mere application of well-settled constitutional principles to discrete factual scenarios is not the application of a new legal theory or one that had not been foreshadowed by other precedents." *Reynoldsville Casket*, 514 U.S. at 762, 115 S. Ct. at 1753 (Kennedy, J., concurring).[26]

Accordingly, rather than overruling *Blackwell* in its entirety, we have chosen to deconstruct the decision, *see supra* Part I(E), and to analyze the present case in light of the underlying themes and principles that are of relevance in this difficult area of the law, *see supra* Parts I(B)-(F). Ultimately, our present decision stands for the principle that the general rule in Pennsylvania will be that, at least where prior judicial precedent isn't overruled, a holding of this Court that a statute is unconstitutional will generally be applied to cases pending on direct appeal in which the constitutional challenge has been raised and preserved. At the present point in time, however, the Court is not of a mind to exclude the possibility of equitable balancing in extraordinary cases, particularly since no party this appeal has advocated any such position.

---

[26] And notably, again, this aspect of *Blackwell* (*i.e.*, the application of a principle that it has said applies when the underlying decision has announced a new principle of law) stands in stark contrast to the *Blackwell* Court's prior pronouncement that no new rule of law was in play. *See Blackwell*, 527 Pa. at 185, 589 A.2d at 1100 ("*Blackwell II* established no new principle of law nor was there a clear break with past precedent.").

**II.**

Turning to Employer's alternative issue based on its right to the due course of law, such entitlement derives from the Remedies Clause in Article I, Section 11 of the Pennsylvania Constitution, which provides:

> All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

PA. CONST. art. I, §11.

Although the rights that this provision confers overlap with constitutional due process norms, due course of law stands as an independent guarantee of legal remedies for private wrongs in Pennsylvania courts. In *Menges v. Dentler*, 33 Pa. 495 (Pa. 1859), this Court explained that the provision for due course of law requires that adjudication must occur pursuant to the temporally applicable law:

> The law which gives character to a case, and by which it is to be decided (excluding the forms of coming to a decision), is the law that is inherent in the case, and constitutes part of it when it arises as a complete transaction between the parties. If this law be changed or annulled, the case is changed, and justice denied, and the due course of law violated.

*Id.* at 498.

The Court, however, has since clarified that the due course of law protects only vested rights — meaning "a title, legal or equitable, to the present or future enforcement of a demand, or a legal exemption from a demand made by another." *Lewis v. Pa. R. Co.*, 220 Pa. 317, 324, 69 A. 821, 823 (1908). Accordingly, and as the Commonwealth Court aptly explained: "the due course of law provision is invoked when a change in the

legislation attempts to alter or eliminate a vested or accrued cause of action." *Dana*, 195 A.3d at 643 (citations omitted).

Employer argues that its right to due course of law impedes any retroactive application of *Protz*, because at the time of Claimant's IRE, Section 306(a.2) was valid. The company submits that the IRE, when performed in July 2014, accrued as a partial defense, and thus, it is entitled to the benefit of the disability modification indefinitely, or at least for the time elapsing before *Protz* was decided.

However, as the Commonwealth Court observed, Employer cites no authority suggesting that the due process of law is applicable whenever a statute is found to be unconstitutional. *See Dana*, 195 A.3d at 644. In any event, we agree with the Commonwealth Court that a disability modification is not vested when it remains subject to a preserved challenge pursued by a presently aggrieved claimant. *See Konidaris,* 598 Pa. at 71, 953 A.2d at 1240 (stating a vested right is "something more than a mere expectation, based upon an anticipated continuance of existing law").

The order of the Commonwealth Court is affirmed.

Justices Baer, Todd, Donohue, Wecht and Mundy join the opinion.
Justice Dougherty files a concurring opinion.