# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dana Holding Corporation,      :
                 Petitioner      :
         :
         v.          :    No. 1869 C.D. 2017
         :    Argued: September 13, 2018
Workers' Compensation Appeal      :
Board (Smuck),      :
                 Respondent      :


BEFORE:      HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE ROBERT SIMPSON, Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge
                 HONORABLE ELLEN CEISLER, Judge


OPINION BY
JUDGE COHN JUBELIRER                  FILED: October 11, 2018

Dana Holding Corporation (Employer) petitions for review of an Order of the Workers' Compensation Appeal Board (Board), which reversed a decision by a Workers' Compensation Judge (WCJ) and reinstated David Smuck (Claimant) to total disability status as of June 20, 2014, the date of his impairment rating evaluation (IRE). The WCJ had granted Employer's Modification Petition, modifying Claimant's disability status from total to partial disability based upon an IRE performed using the Fourth Edition of the American Medical Association's (AMA) *Guides to the Evaluation of Permanent Impairment* (*Guides*), which was, at the time of the WCJ's decision, still a valid means of modifying a claimant's status under this Court's decision in *Protz v. Workers' Compensation Appeal Board (Derry Area*

*School District)*, 124 A.3d 406, 417 (Pa. Cmwlth. 2015) (*Protz I*). However, the Pennsylvania Supreme Court subsequently declared the entirety of Section 306(a.2) of the Workers' Compensation Act[1] (WC Act), which governed IREs, unconstitutional. *Protz v. Workers' Comp. Appeal Bd. (Derry Area Sch. Dist.)*, 161 A.3d 827, 840-41 (Pa. 2017) (*Protz II*). At issue in this appeal is whether Claimant is entitled to the benefit of *Protz II*. Because Claimant's appeal was pending before the Board at the time of that decision, we conclude the Board properly applied the law in effect at the time of its appellate review and, accordingly, affirm.

The pertinent facts are not in dispute. Claimant suffered a work injury described as an "upper back, disc protrusion @ T11-12" on April 6, 2000. (WCJ Decision, Finding of Fact (FOF) ¶ 1.) Employer issued a Notice of Temporary Compensation Payable, acknowledging the injury, which subsequently converted into a Notice of Compensation Payable.

On June 20, 2014, Claimant underwent an IRE that was performed by Lucian P. Bednarz, M.D., who was appointed by the Bureau of Workers' Compensation at Employer's request. Dr. Bednarz opined that Claimant had a whole body impairment rating[2] of 11 percent under the Sixth Edition of the *Guides*.[3] Based upon this IRE, Employer filed its Modification Petition seeking to modify Claimant's

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, added by Section 4 of the Act of June 24, 1996, P.L. 350, 77 P.S. § 511.2, *invalidated by Protz v. Workers' Comp. Appeal Bd. (Derry Area Sch. Dist.)*, 161 A.3d 827, 840-41 (Pa. 2017) (*Protz II*).

[2] "[I]mpairment rating" was defined as "the percentage of permanent impairment of the whole body resulting from the compensable injury." Section 306(a.2)(8)(ii) of the WC Act, 77 P.S. § 511.2(8)(ii), *invalidated by Protz II*. "[I]mpairment" was defined as "an anatomic or functional abnormality or loss that results from the compensable injury and is reasonably presumed to be permanent." Section 306(a.2)(8)(i), 77 P.S. § 511.2(8)(i), *invalidated by Protz II*.

[3] Under Section 306(a.2)(2), a claimant with an impairment rating equal to or greater than 50 percent was presumed to be totally disabled, whereas a claimant with an impairment rating less than 50 percent was considered partially disabled. 77 P.S. § 511.2(2), *invalidated by Protz II*.

disability status from total to partial as of the date of the IRE. Claimant challenged the modification, alleging he had not reached maximum medical improvement, a prerequisite to an IRE.

Various hearings were held before the WCJ. After the record closed, but before the WCJ issued his decision, this Court issued its decision in *Protz I*, wherein we declared that certain IRE provisions found in Section 306(a.2) of the WC Act were unconstitutional. *Protz I*, 124 A.3d at 417. Specifically, we declared the portions of Section 306(a.2) that provided that a claimant's impairment rating should be determined "pursuant to the most recent edition of the [AMA *Guides*]" were an unconstitutional delegation of legislative authority violative of Article II, Section 1 of the Pennsylvania Constitution.[4] We reasoned that "the General Assembly . . . failed to prescribe any intelligible standards to guide the AMA's determination regarding the methodology used in granting impairments." *Id.* at 415. We further explained that "Section 306(a.2) of the [WC] Act is wholly devoid of any articulations of public policy governing the AMA in this regard and of adequate standards to guide and restrain the AMA's exercise of this delegated determination by which physicians and WCJs are bound" and is devoid of any "mechanism requiring governmental review of the *Guides* by the promulgation of regulations." *Id.* Having concluded that Section 306(a.2) was an unconstitutional delegation of legislative power because "it proactively approved versions of the AMA *Guides* beyond the Fourth Edition without review," we vacated the Board's decision and remanded the matter to the Board with instruction to remand to the WCJ for an IRE

---

[4] Article II, Section 1 of the Pennsylvania Constitution provides: "The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives." Pa. Const. art. II, § 1.

determination **applying the Fourth Edition of the *Guides***, which was in effect at the time Section 306(a.2) was enacted. *Id.* at 416.

Because, in *Protz I*, we permitted IREs to be performed using the Fourth Edition of the *Guides*, Employer here sought to reopen the record before the WCJ and introduce a new IRE using that edition. Claimant objected to reopening the record and instead requested the WCJ to dismiss Employer's Modification Petition based upon *Protz I* because the IRE used the Sixth Edition of the *Guides*. Instead, the WCJ allowed the new IRE. Based upon his prior examination on June 20, 2014, Dr. Bednarz found Claimant had a whole person impairment of 15 percent using the Fourth Edition of the *Guides*.

The WCJ found that the IRE performed using the Sixth Edition of the *Guides* was invalid as a result of this Court's decision in *Protz I*. (WCJ Decision at 8.) However, based upon the results of the second IRE using the Fourth Edition of the *Guides*, the WCJ granted Employer's Modification Petition and modified Claimant's disability status from temporary total disability to partial disability, effective June 20, 2014. (WCJ Order.)

Claimant and Employer appealed to the Board. Claimant argued Dr. Bednarz was not qualified to perform an IRE under the Fourth Edition of the *Guides* and that the WCJ's conclusion that Employer met its burden of proof was in error. Meanwhile, Employer cross-appealed, arguing the WCJ erred in concluding *Protz I* rendered the first IRE using the Sixth Edition of the *Guides* invalid.[5] Employer explained that it filed the cross-appeal because *Protz I* was appealed to the Pennsylvania Supreme Court and it wanted:

---

[5] Employer also argued the WCJ erred in awarding litigation costs to Claimant. The Board ultimately affirmed that portion of the WCJ's Decision. Employer has not further appealed from that determination.

4

> to preserve the issue concerning the validity of the finding that [C]laimant had a whole body impairment of less than 50% under the 6th Edition of the AMA *Guides* in the event that the Supreme Court reverses *Protz* and concludes that the evaluation under the "most recent edition" of the *Guides* at the time of the evaluation is constitutional and the determination under the 4th Edition of the *Guides* is rendered moot.

(Employer's Appeal, Record (R.) Item 9.) Employer requested the Board stay the matter until the Supreme Court decided the appeal of *Protz I*, which the Board did.

While the appeal was pending before the Board, the Pennsylvania Supreme Court declared Section 306(a.2) of the WC Act unconstitutional in its entirety. *Protz II*, 161 A.3d at 840-41. The Supreme Court agreed with this Court's holding in *Protz I* that Section 306(a.2) of the WC Act was an unconstitutional delegation of legislative authority. *Protz II*, 161 A.3d at 838. However, the Supreme Court disagreed that the offending language was severable from the rest of Section 306(a.2) and struck Section 306(a.2) in its entirety. *Id.* at 841. As a result, this Court's holding in *Protz I* that use of the Fourth Edition of the *Guides* was permissible was overturned.

After *Protz II* was decided, the Board considered this appeal, which had been stayed. The Board concluded *Protz II* required reversal of the WCJ Decision because the WCJ had relied upon the now-unconstitutional provisions of Section 306(a.2), including the use of the Fourth Edition of the *Guides*. It, therefore, reversed the grant of the Modification Petition and reinstated Claimant to total disability status as of June 20, 2014, the date of the disputed IRE. (Board Opinion at 3.)

Employer now seeks review of the Board's Order.[6] Employer claims the Board erred in retroactively applying *Protz II* to the instant action. Employer argues that the Supreme Court gave no directive in *Protz II* as to its retroactive effect and that the factors to be considered in applying a new rule of law retroactively weigh against retroactivity. Employer particularly stresses the prejudice it claims it will suffer if *Protz II* is held to invalidate past IREs, which have been relied upon by Employer, as well as all other employers and insurers. As a result, Employer seeks prospective application of *Protz II* or, in the alternative, application of *Protz II* only as of the date of that decision and in cases where the issue has been properly raised and preserved. In addition, Employer asserts retroactive application of *Protz II* violates its constitutional right to the "due course of law" under the Remedies Clause of Article I, Section 11 of the Pennsylvania Constitution. Finally, Employer argues Claimant waived his ability to challenge the constitutionality of the IRE by not raising it before either the WCJ or the Board.

Claimant responds that he did, in fact, raise the applicability of the *Protz* decisions throughout the litigation. Regardless, Claimant argues that a party can challenge the validity of a statute for the first time on appeal, citing Section 703(a) of the Administrative Agency Law, 2 Pa. C.S. § 703(a).[7] Claimant asserts he is not seeking full retroactive effect of *Protz II*; rather, he is merely asking this Court to apply the general rule that the law in effect at the time of appellate review applies. Claimant claims that Employer would not be prejudiced by such an application.

---

[6] Our "standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence." *Thompson v. Workers' Comp. Appeal Bd. (Exelon Corp.)*, 168 A.3d 408, 412 n.3 (Pa. Cmwlth. 2017).

[7] Section 703(a) provides, in pertinent part: "A party who proceeded before a Commonwealth agency under the terms of a particular statute shall not be precluded from questioning the validity of the statute in the appeal." 2 Pa. C.S. § 703(a).

Claimant further argues this case is analogous to *Thompson v. Workers' Compensation Appeal Board (Exelon Corporation)*, 168 A.3d 408 (Pa. Cmwlth. 2017), in which, based upon *Protz II*, we reversed the Board's affirmance of a WCJ's decision modifying a claimant's disability status from total to partial based on an IRE, even though it had not been raised before the WCJ or Board.

We begin with the threshold issue in this matter: whether the Supreme Court's decision in *Protz II* applies to appeals that were pending at the time it was decided. There are four approaches in deciding what effect a decision announcing a new rule of law should be given: (1) purely prospective, meaning the new rule does not even apply to the parties in the case in which it was announced; (2) retroactive, but limited to the case where the principle was announced; (3) retroactive to all cases pending at the time it was announced; and (4) full retroactive effect, which applies even to cases which are otherwise final. *Blackwell v. State Ethics Comm'n*, 589 A.2d 1094, 1098-99 (Pa. 1991). Employer argues for prospective application. Claimant, on the other hand, argues not for fully retroactive effect, but instead for retroactive application to all cases pending at the time *Protz II* was decided.

As a general rule, the Pennsylvania Supreme Court has held that an appellate court should "apply the law in effect at the time of appellate review." *Passarello v. Grumbine*, 87 A.3d 285, 307 (Pa. 2014); *Blackwell*, 589 A.2d at 1099. In other words, "a party whose case is pending on direct appeal is entitled to the benefit of changes in law which occur[] before the judgment becomes final." *Blackwell,* 589 A.2d at 1099 (quotation omitted). However, the Supreme Court has cautioned against applying this general rule "rotely." *Passarello*, 87 A.3d at 307. Rather, "[w]hether a judicial decision should apply retroactively is a matter of judicial discretion to be decided on a case-by-case basis." *Id.*

7

In considering whether a decision announcing a new rule of law is to be applied retroactively, the court should consider: "(1) the purpose to be served by the new rule, (2) the extent of the reliance on the old rule, and (3) the effect on the administration of justice by the retroactive application of the new rule." *Blackwell*, 589 A.2d at 1099 (citation omitted). The parties agree that the purpose of *Protz II* "is to mandate conformity with the Pennsylvania Constitution." (Employer's Brief (Br.) at 27; Claimant's Br. at 5.)

With regard to the second factor, Employer makes a broad argument that both "[e]mployers and insurers have litigated or managed hundreds of thousands of claims in reliance on the now-stricken statutory language" and "[m]any of these claims went unchallenged, were considered final and have been closed." (Employer's Br. at 27.) According to Employer, it has now lost the opportunity to pursue other routes of changing Claimant's disability status, such as offering him another position or having a labor market study conducted, because of changes in economic conditions and the passage of time, which has naturally aged Claimant. At oral argument, Employer analogized retroactive application of *Protz II* to changing the rules of play in the middle of the game, which Employer asserted was fundamentally unfair.

We are cognizant of Employer's concerns, but find its argument, under the facts of this case, unpersuasive.[8] Here, the determination of Claimant's disability status was far from final. It was still being actively litigated when the *Protz* decisions were handed down. Claimant underwent his IRE in June 2014. While Employer's Modification Petition based on the Sixth Edition of the *Guides* was pending before

---

[8] Employer appears to urge for a broad, sweeping declaration by this Court. We, however, limit our holding to the facts presently before us – cases where the validity of the underlying IRE were still being litigated at the time *Protz II* was decided.

the WCJ, this Court issued its decision in *Protz I*. As a result, Employer sought permission from the WCJ to reopen the record and introduce a new IRE using the Fourth Edition of the *Guides*, which, at the time, complied with our holding in *Protz I*. Claimant objected to this request and asked the WCJ to dismiss Employer's Modification Petition based upon *Protz I* because the IRE used the Sixth Edition of the *Guides*, but the WCJ allowed the new IRE. Based upon the results of that second IRE, the WCJ modified Claimant's disability status. Claimant and Employer both appealed that decision, albeit for different reasons. Importantly, while that appeal was pending, the Pennsylvania Supreme Court affirmed our decision that Section 306(a.2) of the WC Act was an unconstitutional delegation of legislative authority, but overruled that decision to the extent we held that IREs performed under the Fourth Edition of the *Guides*, which was the most recent edition in effect at the time Section 306(a.2) was enacted, were still valid. The Supreme Court, instead, struck the entirety of Section 306(a.2) from the WC Act. Because Employer's Modification Petition was still being actively challenged at the time *Protz II* was decided, we are hard pressed to find Employer had any reasonable expectation in the finality of the modification of Claimant's disability status.

An en banc panel of this Court recently rejected a similar argument that the employer had an expectation of finality in a case with much stronger facts favoring finality than those present here. In *Whitfield v. Workers' Compensation Appeal Board (Tenet Health System Hahnemann LLC)*, 188 A.3d 599, 616 (Pa. Cmwlth. 2018), we held that claimants could seek reinstatement of total disability status based on *Protz II* within 3 years of the date of the most recent payment of compensation, even if they had already exhausted their 500 weeks of partial disability benefits. This

was because the modifications of disability status were "not yet truly 'final' until three years ha[d] passed since the date of last payment." *Id.* at 617.

Furthermore, Employer had other avenues available to it to modify Claimant's status but chose to utilize the IRE route because it was less expensive and more efficient. Accordingly, it took a risk to pursue an IRE instead of some other mechanism. To the extent it is now foreclosed from pursuing other options, the fault does not lay with Claimant. It bears emphasis that the WC Act "is remedial in nature and intended to benefit the [injured] worker." *Reifsnyder v. Workers' Comp. Appeal Bd. (Dana Corp.)*, 883 A.2d 537, 541 (Pa. 2005).

For these reasons, the second factor weighs in favor of applying *Protz II* to cases that were pending at the time *Protz II* was decided, such as the one presented here.

Concerning the third factor, the effect on the administration of justice by the retroactive application of the new rule, Employer again argues against full retroactive effect. It claims "if the Court was to impose full retroactivity of the *Protz II* holding, the outcome would culminate in an overwhelming burden on the judicial system," including WCJs, the Board, and this Court. (Employer's Br. at 28.) Employer argues that resurrecting IREs reaching back to enactment of Section 306(a.2) in 1996 would "severely impact[]" the administration of justice, and the best way to avert this result is through prospective application of *Protz II*. (*Id.*) We appreciate that there have been many IREs since the procedure was codified in 1996. We note that Claimant's IRE in this case, however, did not occur two decades ago but took place in June 2014 and was in active litigation at the time *Protz I* and *Protz II* were decided. Thus, there had been **no final adjudication** here as to

10

whether Claimant's disability status should be modified from total to partial.[9] We examine each case before us, and in this case, the issue of the IRE process was pending before the Board when *Protz II* was decided.

For similar reasons, we reject Employer's argument that we should apply *Protz II* only from its decision date and not the date of the IRE. Employer argues that it had a vested right and should, at a minimum, receive a credit for three years of temporary disability from the date of the IRE on June 20, 2014, to the decision in *Protz II* on June 20, 2017. These weeks, according to Employer, should be counted towards Claimant's limit of 500 weeks of partial disability compensation. Section 306(b)(1) of the WC Act, 77 P.S. § 512(1). Should Employer seek to use some other statutory mechanism to change Claimant's status to partial, Employer argues it should be entitled to a credit for those weeks between the IRE and *Protz II*. However, this approach does not take into consideration that the IRE determination was never final. In fact, at oral argument, Employer recognized that if the IRE had been overturned on the merits, it would not have been entitled to any credit for the period of partial disability. Accordingly, the time period between the date of the IRE and the decision in *Protz II* should not be counted against Claimant's 500-week period of partial disability.

Having concluded that *Protz II* applies to cases where the underlying IRE was actively being litigated when that decision was issued, we turn to Employer's second argument: it is entitled to the due course of law,[10] which would be violated if *Protz II*

---

[9] We reiterate that our holding is limited to cases, such as this, where the underlying IRE was still being actively litigated when *Protz II* was issued. The extent to which *Protz II* may be retroactively applied to another factual scenario is not currently before us.

[10] "Due course of law" differs from due process. As the Supreme Court explained:

11

is applied retroactively.  This constitutional right is grounded in the Remedies Clause in Article I, Section 11 of the Pennsylvania Constitution, which provides:

> All courts shall be open; and **every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law**, and right and justice administered without sale, denial or delay.  Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

Pa. Const. art. I, § 11 (emphasis added).

Generally, the due course of law provision is invoked when a change in the legislation attempts to alter or eliminate a vested or accrued cause of action. *Konidaris v. Portnoff Law Assocs., Ltd.*, 953 A.2d 1231, 1240 (Pa. 2008).  However, the principle also applies to protect a party's vested or accrued absolute defense from being extinguished.  *Ieropoli v. AC&S Corp.*, 842 A.2d 919, 927 (Pa. 2004); *City of Warren v. Workers' Comp. Appeal Bd. (Haines)*, 156 A.3d 371, 379 (Pa. Cmwlth.), *petition for allowance of appeal denied*, 170 A.3d 1039 (Pa. 2017).  We explained:

> A legal exemption from liability on a particular demand, constituting a complete defense to an action brought, stands on quite as high ground as a right of action.  If the law of the case at the time when it became complete is such an inherent element in it that a plaintiff may claim it as a vested right, on what possible ground can it be held that a defendant has no vested right with respect to an exemption or defense?  The authorities make no distinction between them.

---

The right to due process protects people against official deprivations of liberty or property by the state, except by "law of the land."  By contrast, the right to "due course of law" provides an independent guarantee of legal remedies for private wrongs by one person against another, through the state's judicial system.

*Konidaris v. Portnoff Law Assocs., Ltd.*, 953 A.2d 1231, 1240 (Pa. 2008) (quotation omitted).

12

*City of Warren*, 156 A.3d at 379 (quoting *Lewis v. Pa. R. Co.*, 69 A. 821, 823 (Pa. 1908)).

Employer argues its right to utilize the IRE process to modify Claimant's benefits, which has been relied upon by employers and insurers for over 20 years as a means of capping liability, cannot be limited by *Protz II* because to do so would violate its right to the due course of law. There are two flaws with Employer's argument. First, the due course of law is limited in scope to protecting only **vested rights**. *Konidaris*, 953 A.2d at 1242; *Ieropoli*, 842 A.2d at 927. A vested right is "something more than a mere expectation, based upon an anticipated continuance of existing law. It must have become a title, legal or equitable, to the present or future enforcement of a demand, or a legal exemption from a demand made by another." *Konidaris*, 953 A.2d at 1242 (quotation omitted). Contrary to Employer's assertions, Employer did not have a vested right. As discussed above, its Modification Petition was still being litigated. Therefore, it did not have "title, legal or equitable," to continued reliance on the IRE provisions. *Id.* At best, it had "a mere expectation[] based upon an anticipated continuance of existing law." *Id.* In short, Employer had no reasonable expectation that the IRE would be upheld as Claimant's disability status was still being litigated.

Second, it is not clear to what extent, if any, the Remedies Clause, in which the due course of law protection is found, applies when a statute is declared unconstitutional. Employer cites to no cases applying the Remedies Clause to a statute that was declared unconstitutional, nor have we found one. Rather, the case law appears limited to cases in which the General Assembly has acted either to amend or repeal a statute, such as in *Konidaris* and *Lewis*, or to enact new legislation, such as in *Ieropoli* and *City of Warren,* affecting one's existing rights. The Supreme

13

Court stated that the purpose of the Remedies Clause is protection from legislative action and to ensure a vested right is not eliminated by subsequent legislation. *Konidaris*, 953 A.2d at 1242; *Ieropoli*, 842 A.2d at 932. The dearth of case law applying the Remedies Clause when a statute is declared unconstitutional makes sense in that a party should not be able to claim that its constitutional right to the due course of law is being violated and that it should be able to continue to benefit from an unconstitutional law to the detriment of another party whose rights were affected by that unconstitutional law. Accordingly, we are not persuaded by Employer's Remedies Clause argument.

Finally, Employer argues that Claimant waived his right to challenge the constitutionality of the IRE because he did not raise it before the WCJ or Board. However, it clearly became an issue once *Protz I* was decided. Employer made it an issue by seeking to reopen the record to introduce a new IRE that complied with *Protz I*. Claimant objected to the request and instead requested the WCJ to dismiss Employer's Modification Petition based upon *Protz I* because the IRE used the Sixth Edition of the *Guides*. The WCJ allowed the new IRE over Claimant's objection and expressly stated in his decision that Claimant's objection, based on *Protz I*, was preserved for purposes of appeal. In addition, in its cross-appeal to the Board, Employer again raised *Protz I* as an issue and actually sought a stay pending the Supreme Court's decision in *Protz II,* which the Board apparently obliged in granting. Surely Employer could not expect the Board to apply the Supreme Court's decision only if it was favorable to Employer and disregard it if it was not. Furthermore, although the parties' briefs to the Board are not part of the certified record in this matter, in its brief to this Court, Employer quotes a portion of Claimant's brief to the Board wherein Claimant clearly argues that the Modification

14

Petition "must be reversed in light of *Protz* . . . [*II*]." (Employer's Br. at 40.) In short, *Protz I* and *II* were directly at issue before the WCJ and Board.

Even if they were not, the constitutionality of a statute need not be raised before an administrative agency. Section 703(a) of the Administrative Agency Law provides, in pertinent part: "A party who proceeded before a Commonwealth agency under the terms of a particular statute shall not be precluded from questioning the validity of the statute in the appeal." 2 Pa. C.S. § 703(a). Rule 1551(a)(1) of the Pennsylvania Rules of Appellate Procedure contains a similar provision, providing: "No question shall be heard or considered by the court which was not raised before the government unit except: (1) Questions involving the validity of a statute." Pa.R.A.P. 1551(a)(1).

This is consistent with our decision in *Thompson*. There, although the claimant had not challenged the constitutionality of the IRE before the WCJ or the Board, she did raise it in her petition for review. We rejected the employer's argument that the claimant waived the issue by not timely raising it, noting that "this matter began before *Protz I* and *Protz II* were decided," it implicated the validity of Section 306(a.2) of the WC Act, and the "[c]laimant raised this issue at the first opportunity to do so." *Thompson*, 168 A.3d at 412 n.4. Accordingly, we applied *Protz II* and reversed the Board's decision modifying the claimant's benefits from total to partial. *Id.* at 412-13. Here, although he was not required to raise a constitutional issue at all before the Board, 2 Pa. C.S. § 703(a); Pa.R.A.P. 1551(a)(1), Claimant did raise it in his brief to the Board.

Employer cites this Court's decision in *Winchilla v. Workers' Compensation Appeal Board (Nexstar Broadcasting)*, 126 A.3d 364 (Pa. Cmwlth.), *petition for allowance of appeal denied*, 130 A.3d 1293 (Pa. 2015), for the proposition that

15

Claimant waived the constitutionality argument by not raising it previously. This statement of *Winchilla* is overly broad. In that case, the claimant was appealing modification of his disability status from total to partial based upon an IRE using the Sixth Edition of the *Guides*. The Board affirmed, finding it could not decide the claimant's constitutional challenge. In his petition for review to this Court, the claimant merely stated that "the IRE provisions . . . as applied to [the claimant] and/or facially, are unconstitutional, as they are capricious, arbitrary, not reasonably calculated, confiscatory, not used to assess disability in the [WC] sense, improperly disregard evidence that [the claimant] was totally disabled and improperly extinguish rights." *Id.* at 367 (quoting the claimant's petition for review ¶ 8). However, in his brief, the claimant expounded on that argument and argued specifically that Section 306(a.2) was an unconstitutional delegation of legislative authority. We agreed with the employer's argument that the claimant waived that argument **by failing to raise it in his petition for review**, finding the claimant did not cite Article II, Section 1 of the Pennsylvania Constitution or in any manner assert the IRE provisions were unconstitutional because they delegated legislative authority. *Id.* at 367-68. We held this "unspecified constitutional claim" was insufficient to preserve this issue for appellate review under Rule 1513(d) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1513(d).[11] *Id.* at 368. Thus, *Winchilla* is inapplicable because the issue here is not whether Claimant properly raised this issue in a petition for review to this Court.

---

[11] As discussed in *Winchilla*, Rule 1513(d) was amended in December 2014, after the petitioner in that case filed his petition for review, to allow an appellate court to consider an issue, even if it was not raised in the petition, "if the court is able to address the issue based on the certified record." *Winchilla*, 126 A.3d at 368 n.6 (emphasis omitted) (quoting Pa.R.A.P. 1513(d)). The effect of the amendment was to soften the waiver provisions.

16

In conclusion, because Claimant's change in disability status based upon an IRE was still being litigated at the time *Protz II* was decided, *Protz II* applies. Employer has not demonstrated how applying *Protz II* to a pending case violates its right to the due course of law under the Remedies Clause of the Pennsylvania Constitution. Furthermore, Claimant raised *Protz II* at the first available opportunity, even though he was not required to raise a constitutional issue before either the WCJ or Board.

Accordingly, we find no error in the Board's reasoning and affirm its Order.

 

 

_____

**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dana Holding Corporation,        :
                       Petitioner     :
                                 :
            v.               :    No. 1869 C.D. 2017
                                 :
Workers' Compensation Appeal  :
Board (Smuck),             :
                    Respondent  :

## **O R D E R**

**NOW**, October 11, 2018, the Order of the Workers' Compensation Appeal Board dated November 28, 2017, is **AFFIRMED.**

 

_____
**RENÉE COHN JUBELIRER,** Judge