# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Beaver Valley Slag, Inc.,       :
           Petitioner       :
      :
      v.       :
      :
Jason Marchionda (Workers'       :
Compensation Appeal Board),       :    No. 867 C.D. 2020
           Respondent       :
      :
Jamie Young, Guardian of the       :
Estate of Jason Marchionda, an       :
Incapacitated Person,       :
           Petitioner       :
      :
      v.       :
      :
Beaver Valley Slag, Inc. (Workers'       :
Compensation Appeal Board),       :    No. 901 C.D. 2020
           Respondent       :    Submitted: January 15, 2021


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE ELLEN CEISLER, Judge

OPINION BY
JUDGE COVEY                          FILED: March 10, 2021

         Beaver Valley Slag, Inc. (Employer) and Jamie Young (Guardian), Guardian of the Estate of Jason Marchionda (Claimant), an Incapacitated Person, cross-petition this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) August 13, 2020 order. Therein, the Board affirmed the Workers' Compensation Judge's (WCJ) decision granting Claimant's Petition to Review Compensation Benefit Offset (Petition).

         Employer presents five issues for this Court's review: (1) whether *Whitmoyer v. Workers' Compensation Appeal Board (Mountain Country Meats)*,

186 A.3d 947 (Pa. 2018), is applicable to the instant matter; (2) whether Employer is required to reimburse medical payments made after the date *Whitmoyer* was decided or the date of the Third-Party Settlement Agreement (TPSA); (3) whether Claimant waived his right to raise the issue of reduced reimbursement, pursuant to the TPSA, by failing to dispute Employer's right to reduced reimbursement on all future medical payments at the time the TPSA was executed; (4) whether Claimant is barred by the doctrines of collateral estoppel and/or *res judicata* upon execution of the TPSA and subsequent approval of the TPSA in the Beaver County Common Pleas Court (trial court); and (5) whether the WCJ's decision is well reasoned because it failed to adequately address all exhibits, and Claimant's and Employer's exhibits demonstrate that Claimant voluntarily agreed to a reduced reimbursement rate on future medical benefits.[1]

Guardian presents one issue for this Court's review: whether the WCJ erred by making the modification retroactive to the date *Whitmoyer* was decided, rather than to the date the TPSA was executed.[2]

Claimant worked for Employer when he sustained a severe injury while using a stone crusher machine that malfunctioned. Employer accepted the work injury through a notice of compensation payable (NCP), which described Claimant's injury as a concussion, skull fracture and brain injury. As a result of those injuries, the trial court adjudicated Claimant an incapacitated person and appointed Guardian. In 2014, Guardian filed a products liability lawsuit in the trial court against the stone crusher machine's seller, RECO Equipment (RECO). RECO and Guardian ultimately entered into a Petition for Approval and settled the lawsuit for $10,450,000.00, and the trial court ordered the following distribution: $1,099,600.00

---

[1] This Court has reordered Employer's issues for ease of discussion.
[2] Because Guardian's sole issue is a restatement of Employer's second issue, it will be discussed therein.

2

to Employer to satisfy its net subrogation lien; $3,519,136.00 for costs and attorney's fees; and $5,831,264.00 to a Special Needs Trust (Trust) established for Claimant. Pursuant to the trial court's order, the parties signed the TPSA. The TPSA rendered Employer responsible for 33.7% of Claimant's future weekly WC benefits *and medical expenses* in order to reimburse its *pro rata* share of Claimant's fees and expenses until exhaustion of a subrogation interest in the amount of $8,794,337.00. Thereafter, Employer would be responsible for 100% of Claimant's WC benefits.

On June 19, 2018, the Pennsylvania Supreme Court decided *Whitmoyer*, wherein it ruled that Section 319 of the WC Act (Act),[3] 77 P.S. § 671, precludes employers from subrogating future medical benefits after a third-party settlement is executed.

On August 20, 2018, Guardian filed the Petition seeking review of Employer's subrogation credit of Claimant's third-party recovery pursuant to *Whitmoyer*. Specifically, Guardian sought to recover all of the medical benefits paid from the Trust after the TPSA was executed and relief of the Trust's obligation to pay any future medical benefits.

On January 9, 2019, the WCJ granted the Petition, but concluded that *Whitmoyer* was applicable to the subrogation of Claimant's medical benefits as of June 19, 2018, the date *Whitmoyer* was decided. Accordingly, the WCJ set aside the TPSA to the extent that it requires the Trust to pay any portion of Claimant's medical bills after said date. Consequently, the WCJ ordered Employer to reimburse the Trust for any medical expenses the Trust paid after June 19, 2018, and to pay 100% of Claimant's medical expenses going forward. Employer and Guardian appealed to the Board. On August 13, 2020, the Board affirmed the WCJ's decision.

---

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

3

Employer and Guardian appealed to this Court.[4] By September 22, 2020 Order, this Court consolidated the appeals.

> Initially, Section 319 of the Act provides, in relevant part:
>
> Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe, his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article by the employer; reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer and employe, his personal representative, his estate or his dependents. The employer shall pay that proportion of the attorney's fees and other proper disbursements that the amount of compensation paid or payable at the time of recovery or settlement bears to the total recovery or settlement. **Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith** to the employe, his personal representative, his estate or his dependents, **and shall be treated as an advance payment by the employer on account of any future instalments of compensation**.

77 P.S. § 671 (emphasis added).

> In *Whitmoyer*, the Pennsylvania Supreme Court explained:
>
> [A]fter satisfying the employer's accrued subrogation lien, which encompasses 'compensation' payments made by the employer toward both disability benefits and medical expenses prior to the third-party settlement, the General Assembly intended the excess recovery to be paid to the injured employee and to be treated as an advance payment

---

[4] "On review[,] this Court must determine whether constitutional rights were violated, errors of law were committed, or necessary findings of fact were supported by substantial competent evidence." *Stepp v. Workers' Comp. Appeal Bd. (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 601 n.6 (Pa. Cmwlth. 2014).

4

only on account of any future disability benefits. *See* 77 P.S. § 671.

*Whitmoyer*, 186 A.3d at 957.

> Viewing '**instalments of compensation**' in context, with reference to surrounding language and the overall statutory scheme, we conclude that the term is clear and unambiguous. It **does not refer to medical expenses**. Therefore, having satisfied its accrued subrogation lien at the time of settlement, **an employer is not permitted to seek reimbursement for future medical expenses from the employee's balance of recovery**.

*Id*. at 958 (emphasis added).

Employer argues that the WCJ erred by applying *Whitmoyer* to the instant matter because *Whitmoyer* was before the Board at the time the TPSA was executed. Specifically, Employer contends that since the TPSA was final (given that no appeal was taken therefrom), and no litigation or appeals were pending at the time *Whitmoyer* was decided, Guardian is not entitled to the benefit of the change in the law. Guardian rejoins that Section 413(a) of the Act, 77 P.S. § 771, expressly required the WCJ to review, modify and set aside the materially erroneous portion of the TPSA.

> Section 413(a) of the Act provides:
>
> **A** [**WCJ**] **may**, at any time, **review and modify or set aside** a[n] [NCP] and **an original** or supplemental **agreement** or **upon petition filed by either party** with the [D]epartment [of Labor & Industry], or in the course of the proceedings under any petition pending before such [WCJ], **if it be proved that such** [NCP] or **agreement was in any material respect incorrect**.

77 P.S. § 771 (emphasis added). Here, because Claimant is still receiving disability compensation, the TPSA was not a final resolution of the claim. Therefore, Section 413(a) of the Act permits a WCJ to review and modify or set aside the TPSA upon petition filed by either party. *See* 77 P.S. § 771. Guardian filed the Petition seeking

5

the WCJ to review the portion of the TPSA declaring that Employer was responsible for 33.7% of Claimant's *future* weekly WC benefits and *medical expenses* in order to reimburse its *pro rata* share of Claimant's fees and expenses until the $8,794,337.00 subrogation interest was exhausted. Because under *Whitmoyer*, Employer is not permitted to seek reimbursement for future medical expenses from the employee's balance of recovery, the WCJ was permitted to set aside that portion of the TPSA. Accordingly, the WCJ properly applied *Whitmoyer* to the instant matter.

Employer next asserts that the WCJ erred by applying *Whitmoyer* retroactively. To support its position, Employer cites cases referencing the retroactivity of *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 161 A.3d 827 (Pa. 2017) (*Protz II*), wherein the claimants asserted the unconstitutional nondelegability defense to the employers' petitions for review of impairment rating evaluations (IRE) that were pending when *Protz II* was decided. *See Dana Holding Corp. v. Workers' Comp. Appeal Bd. (Smuck)*, 232 A.3d 629 (Pa. 2020) (*Dana Holding II*); *White v. Workers' Comp. Appeal Bd. (City of Phila.)*, 237 A.3d 1225 (Pa. Cmwlth. 2020).

Guardian retorts that it would be improper to rely upon the retroactivity factors applicable in cases where the parties were actually litigating modifications of material errors and had preserved the issue, at the time the issue was decided in another case. Guardian maintains that granting a review petition under Section 413(a) of the Act requires that correction of the erroneous agreement be effective as of the date of the error's creation. Guardian further contends that, because the *Whitmoyer* Court was interpreting a phrase in Section 319 of the Act for the first time, and its holding was based upon the interpretation of a clear and unambiguous statute, the Court's initial interpretation did not announce a new rule of law; thus, the modification and setting aside of the legally erroneous portion of the TPSA

6

should be retroactive to the date of the erroneous agreement's creation.  Claimant cites *Fiore v. White*, 757 A.2d 842 (Pa. 2000), in support of its position.

> The *Fiore* Court explained:
>
> A case of first impression is one that presents an 'entirely novel question of law,' which 'cannot be governed by any existing precedent.'  BLACK'S LAW DICTIONARY 635 (6th ed. 1990).  [The] resolution of the conflict presented in [*Commonwealth v. Scarpone*, . . . 634 A.2d 1109 ([Pa.] 1993),] was governed by familiar rules of statutory interpretation, grounded in existing case law.

*Fiore*, 757 A.2d at 848.  Accordingly, the *Fiore* Court ruled that "*Scarpone* did not announce a new rule of law.  [The] ruling merely clarified the plain language of the statute."  *Id*. at 848-49.  Consequently, the *Fiore* Court held that because "[o]ur first pronouncement on the substance of a statutory provision is purely a clarification of an existing law[,]" *Scarpone* is retroactive to the effective date of the statute.

However, applying *Fiore* rotely is not consistent with the Pennsylvania Supreme Court's decision in *Dana Holding II* and this Court's holding in *Whitfield v. Workers' Compensation Appeal Board (Tenet Health System Hahnemann LLC)*, 188 A.3d 599 (Pa. Cmwlth. 2018).  This Court explained in *Dana Holding Corp. v. Workers' Compensation Appeal Board (Smuck)*, 195 A.3d 635 (Pa. Cmwlth. 2018) (*Dana Holding I*), *aff'd*, *Dana Holding II*:

> There are four approaches in deciding what effect a decision announcing a new rule of law should be given: (1) purely prospective, meaning the new rule does not even apply to the parties in the case in which it was announced; (2) retroactive, but limited to the case where the principle was announced; (3) retroactive to all cases pending at the time it was announced; and (4) full retroactive effect, which applies even to cases which are otherwise final.

7

*Dana Holding I*, 195 A.3d at 641. "[W]hether a judicial decision should apply retroactively is a matter of judicial discretion to be decided on a case-by-case basis." *Id.* (quoting *Passarello v. Grumbine*, 87 A.3d 285, 307 (Pa. 2014)).

> The U[nited] S[tates] Supreme Court has viewed the decision of whether to apply a new rule retroactively or prospectively as a function of three considerations: (1) the purpose to be served by the new rule, (2) the extent of the reliance on the old rule, and (3) the effect on the administration of justice by the retroactive application of the new rule.

*Blackwell v. State Ethics Comm'n*, 589 A.2d 1094, 1099 (Pa. 1991). In *Dana Holding II*, the Pennsylvania Supreme Court held: "[T]he inertia favoring application of the general rule of retroactive application to cases pending on direct appeal should control." *Dana Holding II*, 232 A.3d at 647.

> Our Supreme Court expounded:
>
> Significantly, this case concerns none of the subject areas in which th[e Supreme] Court has observed that it has additional latitude to implement a ruling prospectively, *i.e.*, rules of the court's own making, involving procedural matters, or entailing common law development. It does not involve public financing or tax refunds . . . . Although there may be some remaining latitude for a balancing of interests given the longstanding presumptive validity of [the statute] and employers' and insurers' understandable reliance thereon for many years, we find that [the e]mployer has not shown that its interests are so substantially predominant as to justify a departure from the default approach.

*Id.* (citation omitted). Accordingly, the *Dana Holding II* Court held that its ruling in *Protz II* was retroactive to the IRE date, rather than the date *Protz II* was decided because the case was on appeal at the time *Protz II* was decided.

Concerning the *Blackwell* Court's holding that its retroactivity approach is applicable to instances in which prior law is overruled and a new

8

principle is announced, the *Dana Holding II* Court believed *Protz II* was not such an instance, opining:

> Our hesitation in crediting this facet of *Blackwell* outright is that the *Blackwell* Court framed the approach as applicable to instances in which prior law is overruled and a new principle is announced, *see id.*; whereas, we are more of the view that 'the mere application of well-settled constitutional principles to discrete factual scenarios is not the application of a new legal theory or one that had not been foreshadowed by other precedents.' *Reynoldsville Casket* [*Co. v. Hyde*], 514 U.S. [749,] 762 [(1995)]. . . (Kennedy, J., concurring).

*Dana Holding II*, 232 A.3d at 648. The *Dana Holding II* Court expounded:

> Accordingly, rather than overruling *Blackwell* in its entirety, we have chosen to deconstruct the decision, and to analyze the present case in light of the underlying themes and principles that are of relevance in this difficult area of the law[.] Ultimately, our present decision stands for the principle that **the general rule in Pennsylvania will be that**, **at least where prior judicial precedent isn't overruled**, **a holding of this Court that a statute is unconstitutional will generally be applied to cases pending on direct appeal in which the constitutional challenge has been raised and preserved**. At the present point in time, however, **the [Supreme] Court is not of a mind to exclude the possibility of equitable balancing in extraordinary cases**, particularly since no party [sic] this appeal has advocated any such position.

*Dana Holding II*, 232 A.3d at 648-49 (citations omitted).

In *Whitfield*, this Court did not address the issue of whether *Protz II* established "a new rule," but rather decided the issue of *Protz II's* application under Section 413(a) of the Act (reinstatement based on whether the disability of the injured employee has increased, decreased, recurred, or has temporarily or finally ceased), as opposed to Section 306(a.2) of the Act (reinstatement based on impairment rating).

9

Indeed, concerning the retroactivity of *Protz II*, the *Whitfield* Court opined:

> Both parties painted this case as an issue involving the retroactivity of *Protz II*. Given the facts of this case, however, the issue is not purely a question of retroactivity. We previously explained:
>
>> A retroactive law has been defined as one which relates back to and gives a previous transaction a legal effect different from that which it had under the law in effect when it transpired. . . . A law is given retroactive effect when it is used to impose new legal burdens on a past transaction or occurrence.
>
> *Dep't of Lab*[.] [&] *Indus., Bureau of Emp*[.] *Sec. v. Pa. Eng'g Corp.*, . . . 421 A.2d 521, 523 ([Pa. Cmwlth.] 1980) (. . . internal citations omitted); *see also Passarello* . . . , . . . 87 A.3d [at] 307 . . . (**requiring a decision to announce a new rule of law before it can be given retroactive effect**); *Commonwealth v. Hughes*, . . . 865 A.2d 761, 780 ([Pa.] 2004) (explaining **a court decision is considered 'new' for purposes of retroactivity if it imposes a new obligation on the parties**). Our decision today does not impose any new legal consequences based upon a past transaction. Simply because *Protz II* is being applied to a case that arose from a work injury and a change in disability status that predates it does not mean it operates retroactively. *Warren v. Folk*, 886 A.2d 305, 308 (Pa. Super. 2005). It would be retroactive if it related back and gave a prior transaction a legal effect different from that which it had under the law in effect at the time. *Id*. This decision does not alter [the c]laimant's past status. Rather, it gives effect to the [c]laimant's status as it existed at the time she filed her reinstatement petition, which was filed within the statutory timeframe for filing such petitions.

*Whitfield*, 188 A.3d at 616-17 (emphasis omitted; emphasis added). Consequently, it is clear that *Whitfield* did not hold that *Protz II* is to be applied retroactively to the effective date of Section 306(a.2) of the Act, or more relevant, the date of the original IRE.

10

Here, the status of the TPSA terms for future medical expense subrogation was not "pending on direct appeal" at the time *Whitmoyer* was decided. *Dana Holding II*, 232 A.3d at 647. Therefore, *Dana Holding II* does not require, and this Court will not order, that *Whitmoyer* be applied retroactively to the date of the TPSA's origination.

Under the *Dana Holding II* Court's reasoning, because Section 319 of the Act was an existing statute which the Pennsylvania Supreme Court had not yet interpreted, and applying well-settled statutory interpretation principles was foreseeable, *Whitmoyer* did not establish a new rule. *See also Fiore*. Thus, this Court's holding that *Whitmoyer* is not retroactive to the date of the TPSA is not based on finding that *Whitmoyer* established a new rule of law, just as the *Dana Holding II* Court's ruling that *Protz* was not retroactive was not based on such a finding.

However, because the TPSA was not a final resolution of the claim, it was subject to review under Section 413 of the Act because Claimant was still receiving disability benefits. Given that our Supreme Court interpreted that portion of Section 319 of the Act for the first time in *Whitmoyer*, such that the TPSA's terms were not known to be materially incorrect until *Whitmoyer* was decided, and Guardian preserved the issue of *Whitmoyer's* application to the TPSA by raising it at the earliest point, Guardian is entitled to the benefit of the ruling as of the date *Whitmoyer* was decided. This result is consistent with *Whitfield*, wherein this Court, for differing reasons, held that *Protz II* was not retroactive to the IRE, but rather the date of the reinstatement petition therein, as that was the date the claimant averred a change in disability status. Here, the date the Pennsylvania Supreme Court decided *Whitmoyer* was the date the portion of the TPSA regarding future medical benefits effectively became invalid. As such, "*given the longstanding presumptive validity of* [*the statutory interpretation*] *and employers' and insurers' understandable*

11

*reliance thereon for many years*," *Dana Holding II*, 232 A.3d at 647, "*equitable balancing*" *is warranted*. *Id*. at 649 (emphasis added).

Moreover, ruling that *Whitmoyer's* retroactivity is not limited to cases pending at the time it was announced is consistent with *Whitmoyer's* holding, wherein the Pennsylvania Supreme Court opined: "[I]t bears emphasizing that the conclusion we reach today is wholly consistent with the remedial nature of the [Act], which should be interpreted for the benefit of the worker and liberally construed to effectuate its humanitarian objectives." *Whitmoyer*, 186 A.3d at 958. Accordingly, the WCJ did not err by directing Employer to reimburse the Trust for any medical expenses the Trust paid after June 19, 2018, the date *Whitmoyer* was decided, and to pay 100% of Claimant's medical expenses going forward.

Employer declares that Claimant waived his right to raise the issue of reduced reimbursement pursuant to the TPSA by failing to dispute Employer's right to reduced reimbursement on all future medical payments at the time the TPSA was executed. Guardian rejoins that the *Whitmoyer* Court held otherwise.

> The WCJ opined:
>
> The [p]arties have followed a procedure since June of 2016, on how medical bills are processed and paid. This process was based upon years of interpretation of Section 319 of the Act. I do not find that by entering into this arrangement in 2016, that Claimant has 'waived' any rights.

WCJ Dec. at 5, Finding of Fact 13(c). This Court agrees. The use of a boilerplate form the WC Bureau (Bureau) provided, which has been used repetitively throughout the years based on the then-current interpretation of Section 319 of the Act, does not constitute waiver of the right to rely on the present interpretation of

12

Section 319 of the Act. *See Whitmoyer*.[5] Accordingly, Claimant did not waive his right to raise the issue of reduced reimbursement pursuant to the TPSA.

Employer also claims that the doctrines of collateral estoppel and/or *res judicata* barred Claimant from objecting to the reduced reimbursement set forth in the TPSA. Specifically, Employer asserts that Claimant agreed to the contents of the Petition for Approval, executed the TPSA, which the trial court approved without objection, and volunteered to set up a medical benefit payment procedure for the Trustee. Thus, Employer contends that Claimant is estopped from raising the issue of reduced reimbursement pursuant to the TPSA.

---

[5] The *Whitmoyer* Court explicated:

> [W]e find no merit to [the employer's] contention that Whitmoyer's counsel [(Counsel)] knew, by virtue of filling in the '37%' figure on the TPSA, that his client's balance of recovery would be susceptible to diminution for future medical expenses paid by the employer. [The employer] characterizes this figure as relevant only to future expenses, and therefore only to medical expenses, because Whitmoyer's disability benefits had been commuted many years prior. This characterization is both inaccurate and inconsistent with [S]ection 319 [of the Act]'s command that 'the employer shall pay that proportion of the attorney's fees and other proper disbursements that the amount of compensation paid or payable at the time of recovery or settlement bears to the total recovery or settlement.' 77 P.S. § 671 . . . .
>
> The Bureau's instructions for filling in the blanks of the boilerplate third-party settlement agreement provide, *inter alia*, that the 'rate of reimbursement to the employee of expenses of recovery is determined by dividing the [WC] lien by the gross recovery.' . . . . Thus, the '37%' figure is both required by the Bureau and material to calculating the employer's net entitlement to subrogation at the time of settlement.

*Whitmoyer*, 186 A.3d at 957-58 (internal citations and emphasis omitted; italics added).
Just as Counsel in *Whitmoyer* could not have presumed knowledge as to the meaning of the terms as written in the Bureau's boilerplate form, neither could Guardian waive his rights thereunder, simply by filling in the blanks as required.

Guardian rejoins that Employer waived the collateral estoppel and *res judicata* defenses because it did not raise these affirmative defenses before the WCJ. Guardian further responds that Employer also waived the *res judicata* affirmative defense by failing to develop that argument in its brief to this Court, and, even if made, Employer would not have prevailed on that argument.

At the outset, Employer raised the collateral estoppel defense before the Board and the Board addressed it. Thus, in an abundance of caution, this Court will also address Employer's collateral estoppel argument. Concerning Employer's *res judicata* argument, in its brief to this Court, the full extent of Employer's argument is as follows: "Collateral estoppel, a form of *res judicata*, applies in this matter to bar Claimant's [] Petition." Employer Br. at 10. The law is well-established that arguments not fully developed will be deemed waived. *See In re Condemnation of Land for S.E. Cent. Bus. Dist. Redevelopment Area No. 1 (405 Madison St., City of Chester)*, 946 A.2d 1154, 1156 (Pa. Cmwlth. 2008) ("Arguments not properly developed in a brief will be deemed waived"). Because Employer did not properly develop its *res judicata* argument, the Court will not address it separately.

The Pennsylvania Supreme Court has explained:

> Collateral estoppel is similar [to *res judicata*] in that it bars re-litigation of an issue that was decided in a prior action, although it does not require that the claim as such be the same. For example, if, in a breach of contract action, the defendant asserts that the contract is invalid because of fraud, but the contract is ruled valid and the defendant is found liable, in a future lawsuit against the same party alleging a separate breach of the same contract the defendant is precluded from asserting the invalidity of the contract based on fraud. *See* Restatement (Second) of Judgments § 27, cmt. a, illus. 2 ([Am. Law Inst.] 1982).
>
> Collateral estoppel will only apply where: the issue is the same as in the prior litigation; the prior action resulted in a final judgment on the merits; the party against whom the

14

doctrine is asserted was a party or in privity with a party to the prior action; and **the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior action**. *See Rue v. K-Mart Corp.*, . . . 713 A.2d 82, 84 ([Pa.] 1998). In some renditions, courts add a fifth element, namely, that resolution of the issue in the prior proceeding was essential to the judgment. *See*, *e.g.*, *Off*[.] *of Disciplinary Counsel v. Kiesewetter*, . . . 889 A.2d 47, 50-51 ([Pa.] 2005).

*In re Coatesville Area Sch. Dist.*, ___ A.3d ___, ___ (Pa. No. 7 MAP 2020, filed January 20, 2021), slip op. at 6 (emphasis added).

Here, Claimant settled his third-party products liability lawsuit by agreeing with RECO to the contents of the Petition for Approval. Employer was not a party or in privity with a party thereto. The trial court ordered the TPSA be executed, and approved the net lien for Employer as a collateral issue so the third-party settlement could be achieved. The legal and factual issues surrounding the TPSA, and upon which the TPSA relied, were not litigated before the trial court, nor did the parties thereto have the opportunity to litigate these issues to a final adjudication on the merits. Accordingly, because Claimant did not have a full and fair opportunity to litigate the issue in the prior action, collateral estoppel does not apply.

Finally, Employer argues that the WCJ did not issue a well-reasoned decision because she failed to adequately address all exhibits and Claimant's and Employer's exhibits demonstrate that Claimant voluntarily agreed to a reduced reimbursement rate on future medical benefits. Guardian responds that the WCJ's FOFs 6, 7 and 13 demonstrated her clear understanding that the parties had followed the prior, generally accepted, erroneous interpretation of Section 319 of the Act, regarding post third-party settlement medical benefit payments. Guardian maintains that the WCJ's decision correctly recognized that the TPSA cannot constitute

15

waiver, and neither can a few letters describing the mechanics of how those erroneous payments would be made.

Section 422(a) of the Act provides:

Neither the [B]oard nor any of its members nor any [WCJ] shall be bound by the common law or statutory rules of evidence in conducting any hearing or investigation, but all findings of fact shall be based upon sufficient competent evidence to justify same. **All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached**. The [WCJ] shall specify the evidence upon which the [WCJ] relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the [WCJ] must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the [WCJ] must identify that evidence and explain adequately the reasons for its rejection. **The adjudication shall provide the basis for meaningful appellate review**.

77 P.S. § 834 (emphasis added). This Court has explained:

In order to satisfy this standard, a WCJ does not need to discuss every detail of the evidence in the record. Rather, Section 422(a) of the Act requires WCJs to issue reasoned decisions so that this Court does not have to 'imagine' the reasons why a WCJ finds that the conflicting testimony of one witness was more credible than the testimony of another witness.

*Amandeo v. Workers' Comp. Appeal Bd. (Conagra Foods)*, 37 A.3d 72, 76 (Pa. Cmwlth. 2012) (citations omitted).

Here, the WCJ opined:

16

6. The Bureau form[] TPSA[] was signed by all [p]arties. The TPSA reflects in #9 that the Employer/Insurer is responsible for 33.7% of any future weekly benefits and medical expenses to satisfy its obligation to reimburse its pro rata share of employee's fees and expenses until the subrogation interest is exhausted[:] $8,794[,]377.00. Thereafter, the Employer/Insurer is responsible for 100% of any compensation liability. (Claimant's Exhibit 2.)

7. Employer's Exhibits B-E address, through correspondence and e-mails of June 2016, the mechanism for how future medical expenses would be paid.[FN] 1

> [FN]1 Essentially, [Employer's insurance carrier] would review and reprice a medical bill, pay 33.7% of the medical bill, and then forward the medical bill, repriced amount, and proof of [Employer's insurance carrier's] 33.7% to the Trustee . . . , which then paid the remaining 66.3% balance of the medical bill.

. . . .

13. Based upon a review of the foregoing, and a review of the Act and the *Whitmoyer* decision, I find that [] Claimant has met his burden of proof in the Petition . . . as of June 19, 2018.

a. The [Employer's insurance c]arrier is responsible for the payment of Claimant's medical expenses at the rate of 100%, and of course, in accordance with repricing and other requirements of the Act.

The TPSA is set aside only to the extent it required the Trust to fund 66.3% of [the] medical expenses.

b. In so finding, I note that the use of the Bureau TPSA form by the [p]arties is not binding.

It is noted that the Court, in *Whitmoyer*, stated[:] 'Similarly, because we granted allocator to determine the meaning of a [s]tatutory [t]erm, the [p]arties' arguments that are specific to the TPSA, rather than the language of the [s]tatute, are unavailing.' *Id.* at 957.

17

The TPSA, like many other forms used by the [p]arties in [WC] matters, may be challenged, set-aside or reviewed. Based upon *Whitmoyer*, Claimant has requested a Review of Medical Billing, which requires a review of the TPSA form.

c. The [p]arties have followed a procedure since June of 2016, on how medical bills are processed and paid. This process was based upon years of interpretation of Section 319 of the Act. I do not find that by entering into this arrangement in 2016, that Claimant has 'waived' any rights. I note Claimant's counsel's reference to the Commonwealth Court's [d]ecision in *Whitmoyer*,[6] on the issue of waiver.

d. *Whitmoyer* applies to this matter as of June 19, 2018.

WCJ Dec. at 4, 5. Clearly, this "adjudication [] provide[s] the basis for meaningful appellate review." 77 P.S. § 834. Accordingly, the WCJ issued a reasoned decision.

For all of the above reasons, the Board's order is affirmed.

_____
ANNE E. COVEY, Judge

---

[6] *Whitmoyer v. Workers' Comp. Appeal Bd. (Mountain County Meats)*, 150 A.3d 1003 (Pa. Cmwlth. 2016), *rev'd*, 186 A.3d 947 (Pa. 2018).

18

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Beaver Valley Slag, Inc.,
                    Petitioner

            v.

Jason Marchionda (Workers'
Compensation Appeal Board),
                    Respondent

Jamie Young, Guardian of the
Estate of Jason Marchionda, an
Incapacitated Person,
                    Petitioner

            v.

Beaver Valley Slag, Inc. (Workers'
Compensation Appeal Board),
                    Respondent

:
:
:
:
:
:
:
:
:     No. 867 C.D. 2020
:
:
:
:
:
:
:
:
:
:
:
:
:     No. 901 C.D. 2020
:

# O R D E R

AND NOW, this 10th day of March, 2021, the Workers' Compensation Appeal Board's August 13, 2020 order is affirmed.

_____
ANNE E. COVEY, Judge